Richard L. ZWEIG and Muriel Bruno, Plaintiffs-Appellants,

v.

The HEARST CORPORATION, a corporation, Defendant-Appellee.

Jerry GREENFIELD, Individually and as a representative of a class of all persons similarly situated, Plaintiff-Appellant,

v.

The HEARST CORPORATION, Defendant-Appellee.

Nos. 74–1979, 74–2028.

United States Court of Appeals, Ninth Circuit.

July 21, 1975.

Certiorari Denied Dec. 8, 1975.
See 96 S.Ct. 469.

Philip M. Brown (argued), Beverly Hills, Cal., for plaintiffs-appellants.

Stephen G. Contopulos (argued), Los Angeles, Cal., for defendant-appellee.

## OPINION

Before KOELSCH and CHOY, Circuit Judges, and McNICHOLS,* District Judge.

McNICHOLS, District Judge:

The above-captioned actions have, by prior order, been consolidated for appeal. The appellee in each case is the same and the controversies arose out of a single transaction. Appellants rely on precisely identical grounds for reversal.

For the purposes of this appeal, jurisdiction in the District Court was founded on 15 U.S.C. § 78j(b) and 17 CFR § 240.-10b–5 (the familiar Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission promulgated under authority of the Act).[1] Jurisdiction here is laid in 28 U.S.C. § 1291.

## FACTUAL BACKGROUND

The Hearst Corporation (hereinafter Hearst) publishes the *Los Angeles Herald Examiner*, a daily newspaper. One Alex A. Campbell, a co-defendant below, not a party to this appeal, is an employee of Hearst and the author of a financial column published five days a week in the Herald Examiner. On June 4, 1969, Campbell wrote, and the paper printed, a column concerning a corporation known as American Systems, Inc. The article tended to be laudatory of American Systems, its management, products, and fiscal condition. Undisclosed in the article was the fact that Campbell had recently invested in American Systems stock.

Subsequent to publication of the June 4 column, the price of American Systems stock rose dramatically. Campbell took advantage of the appreciated market and disposed of some or all of his stock. The value of the stock later fell off.

Plaintiffs alleged various theories of pecuniary damage through the fluctuation of the price of American Systems stock which fluctuation they attribute to the newspaper story. They contend that Campbell's conduct constituted actionable wrongdoing in violation of Section 10(b) and Rule 10b–5. Suit was instituted in each case against Campbell, Hearst and others. Vicarious liability on the part of Hearst is claimed, based on the employment relationship.

Hearst promptly moved for summary judgment as to the claims under Section 10(b), supporting such motions with affidavits. Plaintiffs fully resisted the motions. Hearst prevailed, summary judgment was granted in each case, and this appeal was perfected.

Two issues are concisely delineated for review:

1. Did the District Court err in holding that Hearst had no vicarious liability under the agency theory of *respondeat superior?*

2. Did the District Court err in granting summary judgment in favor of Hearst, based on the good-faith defense permitted by 15 U.S.C. § 78t(a) (Section 20(a) of the Act of 1934)?

We deem it unnecessary to set out in *haec verba* the well-known proscriptions of Section 10(b) and Rule 10b–5 relative to the employment of any manipulative or deceptive devices in connection with the purchase or sale of any security. For the purposes of this appeal, we accept, without deciding, that plaintiffs have pled a meritorious Section 10(b) action.

The two issues faced on this appeal turn on an interpretation of the effect of

---

* The Honorable Ray McNichols, Chief Judge, United States District Court for the District of Idaho, sitting by designation.

1. Counts alleging pendente jurisdiction for negligence and fraud under state and common law theories were also pled. With the dismissal of the federal jurisdiction counts, pendente jurisdiction failed as to Hearst.

Section 20(a) of the 1934 Act, which provides:

> "(a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to **whom** such controlled person is liable, unless the controlling person acted in **good faith and did not** directly or indirectly induce the act or acts constituting the violation or cause of action."

■ The quoted portion of the Act is commonly referred to as the "controlling person" provision. Vicarious liability attaches to a controlling person or entity by operation of law except that a defense of good faith is provided where the controlling person did not directly or indirectly participate in the wrongful acts.

■ Both courts below concluded, we think correctly, that Hearst qualifies as a controlling person under Section 20(a).

■ The threshold issue to be dealt with concerns the effect of the adoption of Section 20(a) by the Congress on the long-established agency doctrine of *respondeat superior*. Appellants contend that Section 20(a) was not intended to supplant the vicarious liability of an employer under agency theories, but provided an enlargement of liability to reach persons having responsibility but not easily fitted into any specific agency classification. Appellee, pointing to our holding in *Kamen & Co. v. Paul H. Aschkar & Company*, 382 F.2d 689 (9th Cir. 1967), *cert. granted,* 390 U.S. 942, 88 S.Ct. 1021, 19 L.Ed.2d 1129, *cert. dismissed,* 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85, urges that in this Circuit the issue is foreclosed contra to appellants' position.

*Kamen* appears to be the forerunner of a series of cases in the various circuits treating with the liability of an employer where an employee violates Section 10(b). It was there held that Section 20(a), the controlling person provision, is to be applied to determine such liability.

The contention that the more stringent doctrine of *respondeat superior* remained effective to establish vicarious liability was rejected. This holding has far-reaching implications because of the exculpatory defense of good faith available under Section 20(a).

The *Kamen* decision has been much discussed, sometimes followed, on occasion distinguished, and other times rejected out of hand. As a result the circuits are not in full accord. The Supreme Court has not spoken on the issue, though the occasion has been afforded.

The *Kamen* rule is well established in this circuit. *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202 (9th Cir. 1970); *Douglass v. Glenn E. Hinton Investments, Inc.*, 440 F.2d 912 (9th Cir. 1971); *Jackson v. Bache & Co., Inc.*, 381 F.Supp. 71 (D.C.1974).

The Second Circuit is in accord. *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2nd Cir. 1973); *Securities & Exchange Commission v. Lum's Inc.*, 365 F.Supp. 1046 (D.C.1973); *Gordon v. Burr*, 366 F.Supp. 156 (D.C.1973), *partially modified on other grounds,* 506 F.2d 1080 (2nd Cir. 1974); *Barthe v. Rizzo*, 384 F.Supp. 1063 (D.C.1974).

The Fourth, Sixth and Seventh Circuits take a contra position. *Johns Hopkins University v. Hutton*, 422 F.2d 1124 (4th Cir. 1970), (affirming the strongly presented arguments of Judge Frank Kaufman at D.C., 297 F.Supp. 1165); *Armstrong, Jones & Co. v. Securities & Exchange Commission*, 421 F.2d 359 (6th Cir. 1970); *Fey v. Walston & Co., Inc.*, 493 F.2d 1036 (7th Cir. 1974).

Leading cases in the Eighth and Tenth Circuits, where Section 20(a) has been held to support liability in Section 10(b) cases, do not specifically deal with the agency remedy question. *Myzel v. Fields*, 386 F.2d 718 (8th Cir. 1967); *Richardson v. MacArthur et al.*, 451 F.2d 35 (10th Cir. 1971).

*Kamen* provides the controlling authority on this appeal. We hold that the trial court correctly held that Hearst was not vicariously liable under the doc-

trine of *respondeat superior* and that, as to Hearst, liability, if any, was as a controlling person under Section 20(a).

We turn to the second specification of error, that of the propriety of the summary judgment entered on the issue of the defense of good faith made available by the terms of Section 20(a).

It is to be noted that there is no contention made that Hearst directly or indirectly induced the act or acts of Campbell which form the basis of plaintiffs' claim of Section 10(b) and Rule 10b–5 violations. We therefore face the narrow question of whether, under Rule 56, Federal Rules of Civil Procedure, the record discloses that there is no genuine issue as to any material fact to the end that Hearst would be entitled as a matter of law to summary judgment on the question of having "acted in good faith".

We are most cognizant of the strictures controlling the granting of summary judgment under Rule 56.

"Summary judgment of course is proper only where there is no genuine issue of any material fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as matter of law." *Stansifer v. Chrysler Motors Corporation,* 487 F.2d 59, 63 (9th Cir. 1973).

An examination of the facts developed by interrogatories and affidavits offered for and against appellants' motion for summary judgment is required. The source of those facts are to be found in affidavits of Donald Goodenow, Managing Editor of the Herald Examiner, and of George R. Hearst, Jr., Publisher of the paper, and in answers to separate interrogatories propounded to and answered by Campbell and by Hearst.

The affidavits and the interrogatory answers do not raise any specific conflict and, indeed, the parties agree as to the basic facts. We therefore paraphrase the affidavits and interrogatory answers.

Mr. Goodenow, as Managing Editor, avers in essence that his duties required him to supervise the reporters; that Campbell had been employed for a number of years;[2] that Campbell chose his own subject without suggestion from the newspaper; that at the time the article in question was published the employer was unaware of any financial interest Campbell may have had in American Systems, Inc.; that the newspaper never investigates the financial affairs of its employees, unless for cause; prior to publication of the article the paper had never received any complaints concerning any article written by Campbell; that, as a result of inquiries concerning the June 4, 1969 column, the Herald Examiner suspended publication of Campbell's articles and conducted an investigation; that at the conclusion of the investigation the newspaper reinstated publication of Campbell's articles only after entering into an agreement that Campbell would not write about a company in which he had a financial interest and, further, would only write about companies listed on one of the two major Stock Exchanges.

Mr. Hearst, by affidavit, stated that he was on the Board of Directors of Hearst and had examined the stock transactions of the Company. He stated that the records reflected that Hearst had had no transactions in American Systems stock of any kind from February 1969 through October 1969.

Answers to interrogatories furnished the following supporting or additional facts: that Goodenow indeed was supervisor over Campbell; that the Managing Editor had the privilege of making changes in Campbell's articles or otherwise edit the column; that Goodenow never had made a change in a column; that proofreaders made minor spelling and punctuation changes; that Campbell had worked for the financial department of the Herald Examiner for 30 years; that the June 4, 1969, column was published in the normal course of Hearst's business; that headlines and some gram-

---

**2.** In his interrogatory answers Campbell states that he has worked for 30 years for the Herald Examiner in the Financial Department.

matical changes are routinely made; that the newspaper expected Mr. Campbell, as well as all reporters, to prepare articles factually and truthfully, and that Goodenow had, prior to June, 1969, discussed this expectation with Campbell; and that Hearst made no attempt to verify Campbell's statements regarding the American Systems column prior to printing, but relied on Mr. Campbell to accurately report information relayed to him from such companies in preparing his column.

Thus is the issue joined. Appellants contend that the record shows a total failure of Hearst to take any precautionary steps to guard against the alleged abuses by its employees; to furnish any guidelines or supervision to financial writers, and that its claimed good faith is in fact achieved only through the neglect of these obligations. They postulate, though no record was made in support, that the investing public relies on financial news published by the prestigious Hearst newspaper chain, as, it is said, Hearst well knows.

They urge therefore that (1) the evidence presented belies the good faith contention of Hearst, or (2) that as a minimum there exist genuine questions of fact as to this issue which militate against determination by summary judgment.

Appellees, on the other hand, take the position they have demonstrated factually that Hearst (1) was not in the securities business, (2) did not at any relevant time deal in American Systems stock, (3) had no financial interest in that company, (4) relied on the integrity of Campbell, a thirty-year employee in the financial department, about whom no complaint had ever been made, and (5) immediately, upon notification of the instant occurrence, had instituted corrective steps. These facts are not in dispute, Hearst argues, and therefore the controversy in this posture merely required that the District Judge determine the legal effect of the undisputed facts. This, they contend, is the purpose of the summary judgment procedure.

It must be evident from the foregoing that in truth there is not presented a factual dispute between the parties. A search of appellants' briefs for any contrary contention is vain. They frequently allege that there is an issue of fact as to Hearst's good faith. This misses the mark. All of the material facts were before the Court below in undisputed form. The Court therefore properly entertained the Motion for Summary Judgment to determine whether or not, on those undisputed facts, Hearst, the moving party, was entitled to judgment as a matter of law. *Stansifer v. Chrysler Motors Corporation, supra; Doff v. Brunswick Corporation,* 372 F.2d 801 (9th Cir. 1967).

The question then narrows to a consideration as to whether or not, under the undisputed facts, Hearst was entitled to prevail as a matter of law. Differently stated—do the facts disclose as a matter of law that Hearst acted in good faith as that defense is contemplated by Section 20(a)?.

Our research has not uncovered, and very competent and thorough counsel have not drawn our attention to, any case either on four squares with this case or offering controlling precedent.

Appellants, understandably, rely for precedential guidance as to what constitutes good faith under Section 20(a) on a number of Section 10(b) cases brought against broker-dealers engaged in the securities business. The rule evolving from these cases is rather well established. Excusing some generalization, these cases involve a factual situation in which a salesman, employee or other agent of a licensed broker dealing in securities is alleged to have violated the provisions of either Section 10(b) or Rule 10b–5 in the sale or purchase of securities; the relationship between the broker and the alleged miscreant being within the controlling person category of Section 20(a).

With considerable unanimity the reported cases have required that to satisfy good faith it must be shown that the controlling person maintained and

enforced a reasonable and proper system of supervision and internal control over controlled persons so as to prevent, so far as possible, violations of Section 10(b) and Rule 10b–5.

The courts of this Circuit, which have considered the question, are uniformly in accord with the foregoing general rule covering broker-dealer situations. *Hecht v. Harris, Upham & Co.,* 283 F.Supp. 417, 438–439 (N.D.Cal.1968), *partially modified on other grounds,* 430 F.2d 1202, 1211 (9th Cir. 1970); *Jackson v. Bache & Co., Inc.,* 381 F.Supp. 71, 96 (N.D.Cal. 1974).

Other circuit and district court holdings are in agreement. *Fey v. Walston & Co., Inc., supra,* at 1051; *Lanza v. Drexel & Co., supra,* at 1301; *Richardson v. MacArthur, supra,* at 42; *Securities & Exchange Commission v. Lum's, Inc., supra,* at 1064; *Gordon v. Burr, supra,* at 169; *Moerman v. Zipco, Inc.,* 302 F.Supp. 439, 447 (E.D.N.Y.1969), *affirmed on opinion below,* 2 Cir., 422 F.2d 871, *petition for rehearing denied,* 2 Cir., 430 F.2d 362; *Moscarelli v. Stamm,* 288 F.Supp. 453, 460 (E.D.N.Y.1968).

The Securities Exchange Act of 1934 contains a provision authorizing the Securities and Exchange Commission to levy sanctions against a broker-dealer who fails to reasonably supervise those under his control so as to prevent violations of the Act. 15 U.S.C. § 78*o* (b)(5)(E).

The rationale for holding broker-dealers to a duty to supervise those who personally deal with the investing public is self-evident. The broker-dealer derives financial gain directly geared to the sales of his broker-representative. Purchasers of securities frequently rely heavily for investment advice on the broker-representative handling the purchaser's portfolio. Such representatives traditionally are compensated by commissions in direct proportion to sales. The opportunity and temptation to take advantage of the client is ever present. To ensure the diligence of supervision and control, the broker-dealer is held vicariously liable if the representative injures the investor through violations of Sec-

tion 10(b) or the rules thereunder promulgated. The very nature of the vast securities business, as it has developed in this country, militates for such a rule as public policy and would seem to suggest strict court enforcement.

Can it logically be held that publishers of newspapers are to be held to a similar standard? Is there demonstrated any public policy need that would so dictate? It must be conceded that the financial page or pages of a large metropolitan newspaper have some influence on the investing public. But, to liken the relationship between a newspaper owner publishing financial news and a reader-investor to the practically fiduciary relationship between the broker and his customer is to depart from reality.

 Hearst's vicarious liability under Section 20(a) cannot be judged by the standards applied to a broker-dealer.

Some lesser standard amounting more nearly to culpability is indicated. A newspaper which requires its reporters to report facts fairly and accurately has a right initially to expect compliance. Unless somehow placed on notice that a particular writer has violated or may violate the requirement of fairness and accuracy, the newspaper may continue to safely anticipate compliance. Where the writer is one with thirty years of service with the paper and not the subject of any complaint during that period, the continued unquestioned publication of his articles is justified. The practicalities of operating a large daily newspaper make it impossible for each item of news or reported interview to be rechecked by supervising editors. If the column or newsstory prepared and submitted by the columnist or reporter does not, on its face, reveal impropriety, the very nature of the newspaper business prohibits cross-checking.

These are the factors to be taken into consideration in order to determine the issue of good faith on the part of a newspaper owner as a controlling person under Section 20(a).

Summary judgment has, as one of its most important goals, the elimination of

waste of the time and resources of both litigants and the courts in cases where a trial would be a useless formality. Courts must, of course, proceed with caution in determining litigation by summary judgment; this is especially true where grave, important and novel questions of law are involved. However, the mere fact that the issues may be complex is not a valid reason to deny summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.

Upon a full review of the undisputed facts presented by this record, and after considering all inferences which may be drawn from those facts in the light most favorable to appellants, we are convinced that Hearst is entitled as a matter of law to a favorable judgment on the issue of good faith.

It follows that the courts below properly granted summary judgment.

The judgments appealed from are affirmed.