Argued October 5, affirmed November 26, 1976

# WILLIAM C. CORNITIUS, INC., *Respondent,*
## *v.*
# WHEELER, *Appellant.*
## (No. 75-2441-L-1, SC 24358)
### 556 P2d 666

*Jeffrey M. Kilmer,* Portland, argued the cause for appellant. With him on the briefs were James L. Sutherland of Frohnmayer and Deatherage, Medford, and Engel, Kellar, Pomajevich and Kilmer, Portland.

*John D. Burns,* Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and McAllister, Holman, Tongue, Howell, Bryson, and Sloper,* Justices.

HOLMAN, J.

---

*Sloper, J., did not participate in the decision of this case.

**HOLMAN, J.**

This is an appeal by defendant from a summary judgment granted plaintiff in an action for forcible entry and detainer.

Defendant, a service station operator who leased his station from plaintiff, admitted that the station lease had expired, that it was not renewed, and that plaintiff gave the necessary notice to vacate before commencing this action. On appeal, defendant contends that the trial court erred in holding that the pleadings and affidavits did not disclose any material issue of fact. See ORS 18.105. The underlying issue is the availability of defendant's affirmative defenses.

The pleadings and defendant's affidavit show that since 1956 defendant has been a Shell Oil Company service station dealer in Medford. He leased the station premises from Shell between 1956 and December 1973 under a series of three-year leases. Although the leases contained no provision for renewal, they were always renewed for three-year periods on the same terms except for changes in the rental amount.

In December 1973 Shell sold its retail distribution network in southern Oregon to plaintiff, including the station operated by defendant. After the sale, defendant was assured by Shell and by plaintiff that the sale would not result in any change in business practice. In reliance on that representation, defendant executed a new lease with plaintiff as lessor for the remainder of his current lease period. A dealer service contract, similar to the contracts under which defendant had previously dealt with Shell, was signed at the same time. During all this period, according to defendant's affidavit, he never had an opportunity to negotiate the terms of any of the leases or dealer service contracts.

The lease and service contract expired on August 31, 1975. Plaintiff then offered defendant a one-year renewal at a rental rate which, according to defend-

ant's affidavit, was higher than that being charged other dealers similarly situated. When defendant asked that the terms be put in writing so that he could discuss them with his attorney, plaintiff's president refused to do so and refused to negotiate further. Defendant's affidavit also states that during the period he dealt with plaintiff, plaintiff's president had "suggested" to him that he charge less for gasoline and that he purchase more non-petroleum products from plaintiff, but that he was never told that plaintiff would not renew his lease if he refused to do so.

Defendant has urged on appeal that five separate defenses were each available in this action and that each of them involved triable issues of fact. For purposes of this opinion, these five defenses may conveniently be discussed in three categories.

First, defendant argues that the lease (and the associated dealer service contract) are unconscionable in that they fail to contain a provision requiring plaintiff to renew on reasonable terms. Defendant also contends that there is, as a matter of law, a fiduciary relationship between the parties which imposed on plaintiff the obligation to offer to renew the lease on reasonable terms. The argument in support of these defenses is that, as a matter of public policy, oil companies and those who stand in their shoes should not be permitted to terminate, or to refuse to renew, their leases and agreements with retail service station operators except for cause. This policy argument proceeds from the disparity in bargaining power between the parties which enables oil companies and their jobbers to make a practice of offering only short-term service station leases and dealer agreements on take-it-or-leave-it terms. The dealer is, therefore, at the mercy of the company. The entire value of his business is based on the good-will generated at a particular location and the dealer is therefore, defendant contends, highly vulnerable to improper or illegal pressures from the landlord.

Defendant is not alone in his belief that the service station dealer lessee is in a difficult position. One commentator has described the situation as follows:

"In the Nation's second largest industry, the major oil firms have their gasoline station dealers in virtual bondage, hinged on the constant threat that their short-term contracts will not be renewed unless they submit to burdensome franchisor-imposed practices * * *.

"* * * * *.

"Because of the excessively high cost of acquiring the site and building a station, the franchisor will use every conceivable tactic to increase the sale of gasoline and oil, including setting unrealistic quotas in the minimum rental and requiring stations to be open seven days a week, twenty-four hours day, regardless of the minimal sales, high labor costs, and exposure to robbery during marginal hours. * * * As for tires, batteries, and accessories (TBA), the dealer is induced to purchase at excessive prices from designated vendors who then pay commissions to the franchisor; he is even discouraged from doing major repair work when TBA sales would be minimal.

"* * * * *.

"Because gas station dealers are not requested to make a capital payment for their franchise and are only required to purchase about 5,000 dollars' worth of TBA in order to go into business, the oil companies argue they are not franchisees but merely lessees, with no goodwill in their dealerships. They thus deny that the dealer has a vested interest barring cancellation or failure to renew. These claims are, however, wholly inconsistent with the companies' universal refusal to grant a lease unless the dealer agrees to handle their products and to renew the lease unless the record of performance has been satisfactory.

"It is generally conceded that the gasoline station situation is almost hopeless and offers a prime example of the worst abuses in franchising. * * *." Brown, *Franchising—a Fiduciary Relationship,* 49 Tex L Rev 650, 655-57 (1971). (Footnotes omitted.)

A number of recent cases in which dealers have challenged the contractual right of station owners to

terminate, or to refuse to renew, the service station lease, indicates that the problem is still a real one. *See, e.g., Clark Oil & Refining Corp. v. Thomas,* 25 Ill App 3d 428, 323 NE 2d 479 (1975) (lessor's alleged violations of antitrust laws *held* not a defense in action for forcible entry and detainer); *Pickerign v. Pasco Marketing, Inc.,* 303 Minn 442, 228 NW 2d 562 (1975) (service station operator who sought determination that termination clause in lease was unconstitutional *held* entitled to preliminary injunction pending decision on merits); *Shell Oil Company v. Marinello,* 63 NJ 402, 307 A2d 598, 67 ALR 3d 1291 (1973), *cert. denied,* 415 US 920, 94 S Ct 1421, 39 L Ed 2d 475 (1974), *affirming* 120 NJ Super 357, 294 A2d 253 (1972) (public policy requires implied term in service station leases that lessor cannot refuse to renew without good cause); *Mobil Oil Corporation v. Rubenfeld,* 72 Misc 2d 392, 339 NYS 2d 623 (1972) (oil company lessor who refused to renew lease and dealer contract because dealer refused to enter agreements violating antitrust laws *held* not entitled to recover possession of premises, *affirmed,* 77 Misc 2d 962, 357 NYS 2d 589 (1974), *reversed,* 48 App Div 2d 428, 370 NYS 2d 943 (1975) (violation of antitrust laws by landlord is not a defense to action for possession upon expiration of lease); *Ashland Oil, Inc. v. Donahue,* 223 SE 2d 433 (W Va 1976) (service station lease and dealer agreement giving gasoline supplier unqualified right to cancel on ten days' notice *held* unconscionable on its face); *Clark Oil & Refining Corp. v. Leistikow,* 69 Wis2d 226, 230 NW 2d 736 (1975) (dealer's defenses of antitrust violations, promissory estoppel and policy of franchise investment law would not defeat oil company's action for possession of service station premises after expiration of lease).

The vulnerability of the service station operator in these relationships is shared with that of the franchisee in other contexts. *See generally* Brown, *supra,* 49 Tex L Rev 650 (1971); Gellhorn, *Limitations on Contract Termination Rights-Franchise Cancellations,*

1967 Duke L J 465; Chisum, *State Regulation of Franchising: The Washington Experience,* 48 Wash L Rev 291 (1973); Comment, *Franchise Regulation: An Appraisal of Recent State Legislation,* 13 B.C. Ind. & Com. L Rev 529 (1972). A number of state legislatures have addressed the problem with statutes limiting the right of a franchisor to terminate or refuse to renew a franchise without good cause.[1] Some states have directed their legislation specifically to the problems of the service station operator.[2] A bill which would have limited the right of oil companies and others to cancel or to refuse to renew a service station lease without cause was introduced in the 1975 session of the Oregon Legislature but never reached a vote in either house.[3]

Defendant points to these legislative efforts as evidence of an emerging public policy and urges us to recognize and give it effect in this case by holding that every such lease and dealer agreement contain an implied term requiring the lessor to offer a renewal on reasonable terms in the absence of good cause for termination of the relationship.

So far as we can determine, only one jurisdiction has held that service station leases must be so construed. In *Shell Oil Company v. Marinello,* 63 NJ 402, 307 A2d 598 (1973), the Supreme Court of New Jersey so held. Although the New Jersey court found additional support for its decision in general policies applicable to contracts of adhesion, an instrumental factor in the case was the recent legislative enactment of a Franchise Practices Act which contained the very

---

[1] *See, e.g.,* Conn Gen Stat Ann § 42-133 e-g (West); Del C Ann tit 6, §§ 2551-2553; NJ Stat Ann §§ 56:10-1—10-12 (West); Wash Rev Code § 19.100.180; Wis Stat Ann ch 135 (West). *See also* Ga Code Ann §§ 84-6601—6612, applicable to certain vehicle and equipment dealerships.

[2] *See, e.g.,* Ariz Rev Stat §§ 44-1551—1560; Cal Bus & Prof Code §§ 20999-20999.1 (West); La Rev Stat Ann §§ 51:1451-1455 (West); Me Rev Stat tit 10, §§ 1451-1456 (West); Md Comm'l Law Code Ann §§ 11-301—308; Mass Gen Laws Ann ch 93E, §§ 1-9 (West); NY Gen Bus Law § 199 a-i (McKinney).

[3] Senate Bill 382, 1975 Oregon Legislature.

prohibition the court read into the lease before it. Although the Act did not, because of its effective date, directly apply to that lease, the court was able to rely on an authoritative legislative declaration of New Jersey's public policy with respect to the franchisor-franchisee relationship. *Compare Clark Oil & Refining Corp. v. Leistikow,* 69 Wis2d 226, 230 NW 2d 736 (1975), where the court refused to apply new franchise practices legislation to an agreement which was not within its terms.

Other cases on which defendant relies have involved the exercise by the lessor of a reserved right to terminate the relationship without cause during the term of the lease. *Ashland Oil, Inc. v. Donahue,* 223 SE2d 433 (W Va 1976); *Pickerign v. Pasco Marketing, Inc.,* 303 Minn 442, 228 NW 2d 562 (1975). The case before us does not involve, and we do not consider, the enforceability of a one-sided cancellation clause in a contract of adhesion. The present case involves only the right of a service station owner to omit from the lease it offers dealers any provision obligating it to renew the lease.

Defendant refers us to *Perkins v. Standard Oil Co.,* 235 Or 7, 383 P2d 107, 383 P2d 1002 (1963), in which we held that a contract between an oil company and a jobber contained an implied condition that the oil company would not solicit the jobber's customers. In that case we recognized the principle that every contract contains an implied condition of good faith and fair dealing in its performance. That principle does not require that a lease or contractual relationship which is, by its terms, limited to a specific period be converted into a permanent relationship terminable only at the option of the lessee. Such a holding, premised on inequality of bargaining power and the consequent ability of the oil company lessor to dictate the terms of the agreement, could not be rationally limited to the service station context. Similar problems face many other small businesses which are dependent on their location for most of their goodwill

without respect to whether they lease from large corporations or whether the leases are coupled with franchise arrangements. We do not believe that the failure of a lessor to include a renewal provision in a lease is per se unconscionable and, without legislative guidance, we have no basis for declaring that public policy requires such a provision in some leases and not in others.[4] The trial court did not err in holding that the defenses of unconscionability and fiduciary relationship presented no material questions of fact and would not defeat the motion for summary judgment.

Defendant next contends that plaintiff's motive for refusing to renew the lease was to retaliate for defendant's refusal to engage in allegedly anticompetitive practices and his refusal to agree to lease terms which were in violation of applicable rules of the Federal Energy Office and the Cost of Living Council. In effect, defendant asks us to adopt the defense of "retaliatory eviction."

■ That defense has received judicial recognition in recent years in response to the practice of evicting tenants in substandard housing who reported violations of building or housing safety codes. The leading case is *Edwards v. Habib,* 130 US App DC 126, 397 F2d 687 (1968), *cert. denied,* 393 US 1016, 89 S Ct 618, 21 L Ed 2d 560 (1969), in which the court said:

> "* * * In light of the appalling condition and shortage of housing in Washington, the expense of moving, the inequality of bargaining power between tenant and landlord, and the social and economic importance of assuring at least minimum standards in housing conditions, we do not hesitate to declare that retaliatory eviction cannot be tolerated. * * *." 397 F2d at 701. (Footnotes omitted.)

This doctrine, which has not yet received universal

---

[4] In fact, serious constitutional questions are raised by the prospect of implying such a term, substantially changing the parties' relationship, in an existing agreement. *See* Fornaris v. Ridge Tool Co., 423 F2d 563 (1st Cir), *vacated on other grounds,* 400 US 41, 91 S Ct 156, 27 L Ed 2d 174 (1970); Globe Liquor Co. v. Four Roses Distillers Company, 281 A2d 19 (Del Super Ct), *cert. denied,* 404 US 873, 92 S Ct 103, 30 L Ed 2d 117 (1971).

recognition, was developed with special reference to a clear public policy of insuring tenants a safe and sanitary place to live. It has never, so far as we can determine, been applied in a commercial setting, but has been limited to situations in which the lease covered residential property, and the landlord's alleged violations had to do with conditions on the premises affecting safety and health. See the cases collected at 40 ALR3d 755 (1971).

■   Defendant concedes that there are remedies available, in appropriate proceedings, for damages suffered as a result of antitrust violations and for violations of the regulations of the Federal Energy Administration. If additional remedies are needed, we believe, for the reasons discussed above, that they should be provided and delineated by the legislature. In the commercial setting, we are unwilling to hold that the landlord's refusal to renew a lease for motives which are, or may be, improper gives the tenant the right to remain on the premises indefinitely.

■   Finally, defendant urges defenses related specifically to the lease involved in this case and the parties' past relationship. He contends that an agreement to renew this lease on reasonable terms must be implied from the conduct and prior dealings between the parties, and urges that the written lease should be reformed to reflect that agreement. Defendant's affidavit recites that his prior dealings with Shell always included the renewal of his lease with changes only in the rental terms, and also recites that Shell's representatives told him that his lease terms were substantially the same as those offered to other dealers similarly situated. The affidavit goes on to recite that prior to his signing the new lease with plaintiff, defendant was told both by Shell's representative and by plaintiff that

> "* * * this change was being made for the administrative and economic convenience of Shell and would not result in any change of any business practice or business

relationship that had theretofore existed between Shell and myself."

The affidavit further recites that the only terms upon which defendant was offered a renewal by plaintiff were for a one-year period at a rental rate higher than those being offered by plaintiff and Shell to other dealers similarly situated, and that he was refused the opportunity to negotiate over these terms.

Although the affidavit states that during the period he dealt directly with Shell, defendant always "understood" that Shell would renew his lease, and that he always "believed and Shell never said or did anything to contradict this belief, that I had a life-long business as long as I lived up to my leases and contracts," there is no showing that any conduct or representations by Shell were responsible for defendant's belief. The only conduct on the part of Shell which the affidavit discloses is the periodic renewal of the lease and dealer agreements. Contrary to defendant's contention, an opposite inference is drawn from the parties' past dealings. The repetitive omission of a provision for a renewal in the prior leases is indicative of no legally enforceable expectation on defendant's part that he was entitled to one. Had the parties intended the lease to be renewable, such a provision would have been included therein. Although periodic renewals of a lease may give rise to expectations by the tenant that renewal is likely in the future, this is insufficient to create an obligation to renew. If Shell was under no such obligation, plaintiff did not assume one by representing to defendant that the purchase of the station property would not result in a change in business practice or business relationships.

Defendant's lease had expired, and none of the affirmative defenses raised any triable issue as to defendant's right to remain in possession after its expiration. The trial court did not err in granting plaintiff's motion for summary judgment.

Affirmed.