Donald L. MURPHY, et al.,
Plaintiffs-Appellants,

v.

WHITE HEN PANTRY COMPANY,
Defendant-Appellee.

No. 81–2970.

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 1982.
Decided Oct. 19, 1982.

Allan H. Deutch, Deutch, Hansher & Grodsky, Milwaukee, Wis., for plaintiffs-appellants.

Andrew O. Riteris, Michael, Best & Friedrich, Milwaukee, Wis., for defendant-appellee.

Before PELL, DAVIS,* and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

In this diversity case the plaintiffs, seventeen individuals who own and operate White Hen Pantry convenience food stores in Wisconsin under franchise agreements with the defendant, White Hen Pantry Company, appeal the entry of summary judgment against them. In their complaint, the plaintiffs sought damages, declaratory and injunctive relief, reformation of the franchise contracts, and an accounting. As the basis for obtaining that relief, the plaintiffs raised eleven separate theories of liability under Wisconsin statutory and common law. The district court summarized the plaintiffs' claims in its unpublished memorandum decision.

[T]he plaintiffs in essence are alleging in their complaint that the defendant offered for sale nonnegotiable form franchise agreements; that due to the inequity of the parties' bargaining positions the plaintiffs were compelled to enter into the agreements on a take it-or-leave it basis; that in result certain of the provisions of the agreements are unconscionable and should be reformed or voided and certain of them are unlawful under the Wisconsin statutes; and that the defendant, due to its superior economic position, owes a fiduciary duty to the plaintiffs which it has failed to perform. The major areas of complaint concern the insurance provisions in the agreements, the defendant's provision of accounting services to the plaintiffs, its practices with reference to offering subsidies to various franchisees in an allegedly inequitable manner, and its use of promotional sales allowances and advertising funds.

After two years of extensive discovery by the parties, the district court granted the defendant's motion for summary judgment on all eleven counts and dismissed the complaint. The plaintiffs appeal that decision. We affirm.

I

The plaintiffs first argue that, in granting summary judgment, the district court ignored a claim for breach of the franchise agreement, implicitly alleged in the complaint.[1] The plaintiffs assert that the liberal pleading policy underlying the Federal Rules of Civil Procedure required the district court to construe the complaint broadly and prohibited dismissal of the action simply because the plaintiffs failed to expressly plead the precise legal theory on which their claim was based. *See Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707, 714 (8th Cir. 1979); *International Distributing Corp. v. American District Tele-*

* The Honorable Oscar H. Davis, Circuit Judge of the United States Court of Appeals for the Federal Circuit, is sitting by designation.

1. The plaintiffs do not contend the complaint expressly alleged a cause of action for breach of contract. In the first paragraph of the complaint, the plaintiffs specifically enumerated the theories of recovery relied upon. While those theories included causes of action under state statute and common law, none included a cause of action for the breach of the franchise agreement. The plaintiffs' argument is limited to the assertion that the complaint nevertheless alleged sufficient facts to notify the defendant that the lawsuit might encompass a cause of action for breach of contract.

*graph Co.,* 569 F.2d 136, 139–40 (D.C.Cir. 1977); *Janke Construction Co., Inc. v. Vulcan Materials Co.,* 527 F.2d 772, 776–77 (7th Cir. 1976); *Sessions v. Chrysler Corp.,* 517 F.2d 759, 760–61 (9th Cir. 1975).

The plaintiffs' pleading responsibilities under the Federal Rules of Civil Procedure are well-settled.[2]

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.... Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.... The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957). Thus, the question presented is whether the plaintiffs pleaded sufficient facts to notify the defendant of their allegation that the franchise agreement had been violated.

The complaint failed to satisfy even this generous standard.

■ The portions of the complaint which the plaintiffs rely upon to support their argument are too inspecific to allege, even by implication, a breach of contract. Though the plaintiffs alleged White Hen Pantry Company representatives entered their stores and changed prices marked on shelf goods to conform to the franchisor's suggested retail prices, there is no indication in the pleadings that the franchise agreement prohibited these actions. The plaintiffs similarly suggest that the district court should have construed paragraph 67 of the complaint in combination with paragraph 38 to conclude that the franchisor did not use "its best efforts to procure and maintain insurance" for the franchisees, again in violation of the franchise agreement. The plaintiffs alleged in those paragraphs only that the franchisor acted as a "self insurer" and neglected to notify the franchisees of that action. Again, there is no indication in the complaint that the action violated the franchise contract. In fact, the plaintiffs' attorney asserted before the district court that this count in the complaint did not allege a breach of contract. Because counsel expressly disclaimed all reliance on this theory in the court's presence, the district court did not construe the complaint too narrowly. The other references in the complaint which the plaintiffs cite to support their argument are equally unspecific.[3]

---

2. In pertinent part, Fed.R.Civ.P. 8 provides:

(a) *Claims for Relief.* A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain

\*   \*   \*   \*   \*   \*

(2) a short and plain statement of the claim showing that the pleader is entitled to relief,

\*   \*   \*   \*   \*   \*

(e) *Pleading to be Concise and Direct; Consistency.*

(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

\*   \*   \*   \*   \*   \*

(f) *Construction of Pleadings.* All pleadings shall be so construed as to do substantial justice.

3. As a final matter, the plaintiffs argue that their answers to the following interrogatory substantiates their contention that the claim was based on breach of contract:

Please identify each and every act of the defendant contrary to the terms and conditions of the White Hen Pantry Franchise Agreement which was done subsequent to the alleged inducement.

In response, the plaintiffs listed numerous grievances regarding the franchise relationship.

Although answers to interrogatories are directly relevant to the disposition of a motion for summary judgment, Fed.R.Civ.P. 56(c), the district court did not err in declining to consider the plaintiffs' answers here. The interrogatory was asked to clarify count three of the complaint. That claim was based on state antitrust statutes and had been voluntarily dis-

It is axiomatic that even to arguably allege a claim based on breach of contract, the complaint must make some reference to the written agreement between the parties. The complaint here is nearly devoid of all mention of the specific provisions of that document. The liberal pleading policy in the Rules prevents dismissal of a meritorious action for purely formal or technical reasons. The district court is not required, however, to speculate over the nature of the plaintiffs' claim or to refuse to enter summary judgment for the defendant simply because the plaintiffs may, theoretically, be entitled to recover under a cause of action based on facts never alleged in the complaint. In addition in this case in one instance the theory was disclaimed by plaintiffs' counsel. The Rules do not allow a plaintiff to abdicate the responsibility of alleging the basic facts demonstrating his entitlement to relief. A plaintiff must give the district court some clue as to what his case is about. The plaintiffs here failed to meet their burden.

■■■ The plaintiffs also argue that the district court erred in declining to allow amendment of the complaint after it became apparent that a claim for breach of contract arguably existed. The district court's refusal to permit amendment of the complaint may be set aside on appeal only for an abuse of discretion. *Zenith Radio Corp. v. Hazeltine,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). The exercise of that discretion is guided by Fed. R.Civ.P. 15(a), which provides that leave to amend the pleadings "shall be freely given when justice so requires" and by the Supreme Court's short discussion of Rule 15(a) in *Foman v. Davis.*

If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The district court did not abuse its discretion in refusing to allow the plaintiffs to amend their complaint. The plaintiffs filed the motion six weeks before trial, *see Lyons v. Board of Education of Charleston Reorganization School District No. 1,* 523 F.2d 340, 348 (8th Cir. 1975), two years after commencing the action, *see Rogers v. Valentine,* 426 F.2d 1361, 1362 (2d Cir. 1970) (*per curiam*), and several months after the parties had completed discovery. Since the motion injected an entirely new theory of liability into the lawsuit, it would have required reopening discovery and further delayed the trial. Amending the complaint at this late stage clearly would have prejudiced the defendant, who, having successfully defended against the initial allegations, may have been forced to duplicate its efforts if discovery were reopened. *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968, 970–71 (6th Cir. 1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974). The plaintiffs, moreover, offered no explanation for their delay in seeking to

missed by the parties before the summary judgment hearing. Thus, the answers to the interrogatory were not in a context precisely relevant to the issues raised on the defendant's motion.

More importantly, the best indication of the legal theories the plaintiffs actually relied upon occurred at the summary judgment hearing. There the district court recognized that, while the plaintiffs had not expressly pleaded a cause of action for breach of contract, arguments in their brief opposing the motion appeared to

imply that the plaintiffs relied upon that theory. Having alerted the plaintiffs' counsel to the confusion, the district court repeatedly provided him the opportunity to clarify the position. Even then, the plaintiffs failed to mention the allegations contained in the answers to the interrogatory or otherwise express the belief that the franchise agreement had been breached. Given the depth of this inquiry, the district court did not erroneously conclude that the plaintiffs had failed to advance a cause of action based on a breach of contract.

amend the complaint. *See Douglass v. First National Realty Corp.,* 437 F.2d 666, 668 n.1 (D.C.Cir.1970) (*per curiam*). The theory of liability was not novel and did not depend on facts discovered late in the discovery process. Even though a request to amend the complaint should be freely granted, the district court did not abuse its discretion by denying plaintiffs' motion here.

## II

The plaintiffs next argue that the district court erred in granting the defendant's motion for summary judgment on count eleven, which alleged that the franchisor-franchisee relationship imposes a fiduciary obligation on White Hen to account to the plaintiffs for all sums which it had received from them under the agreement (including especially advertising funds, funds collected for insurance, and the franchise fee). In their Reply Brief, plaintiffs aver that this count "raises the most important legal issue in this lawsuit" and is "critical to the entire complaint" since it refers to, and presumably provides an alternative basis for, other counts in the complaint. The district court, finding an almost uniform rejection of such a fiduciary theory in these circumstances under Wisconsin law and by the courts of other jurisdictions, found no legal basis for plaintiffs' allegation. Plaintiffs concede that the proposition they would have had the district court adopt has not yet been established in the Wisconsin courts, and instead argue that the very absence of a definitive state precedent imposing such a norm on this rapidly expanding form of business enterprise demanded the district court's intervention to rectify this gap.

■ We note at the outset that, where state courts have not previously addressed an issue, the district court's construction of state law on that issue is given great weight on appellate review. *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 203–4, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1955); *Buehler Corp. v. Home Insurance Co.,* 495 F.2d 1211, 1214 (7th Cir. 1974); Wright, Federal Courts § 58, at 271 (1976

ed.). Moreover, precisely because the district court enforcing a state-created right in a diversity case is in substance "only another court of the state," the federal court may not "substantially affect the enforcement of the right as given by the state." *Bernhardt,* 350 U.S. at 203, 76 S.Ct. at 276, *quoting Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. Plaintiffs have cited *Zweig v. Hearst Corp.,* 521 F.2d 1129 (9th Cir. 1975), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399, for the proposition that courts must proceed conservatively with summary judgment where novel or important questions of law are presented. The cause of action in *Zweig,* however, arose under the *federal* securities laws, whose development a federal court might undertake more readily than the state common law. *Zweig,* 521 F.2d at 1136 (summary judgment affirmed even though underlying legal issues "complex").

■ Even without according special weight to the district court's construction of prevailing law, we find that the court correctly determined that there was no legal basis for the argument that White Hen owed a fiduciary duty to the plaintiffs. The court thoroughly canvassed the decisional law addressing this matter, concluding that, except in the case of franchise termination, where literal effect has been sometimes denied to franchise contracts, the courts have refused to impose fiduciary obligations upon franchisors. After reviewing the cases, we are in agreement with that assessment. *See, e.g., Newark Motor Inn Corp. v. Holiday Inns, Inc.,* 472 F.Supp. 1143, 1151–1152 (D.N.J.1979) (rejection of argument that fiduciary obligation exists constraining franchisor from granting franchise to competitor close to plaintiff's location, noting that fiduciary obligation has been restricted to termination cases); *In re Seven-Eleven Franchise Antitrust Litigation,* [1974] Trade Cases (CCH) ¶ 75,429 at 98,429 (N.D.Cal.1974) (in convenience store franchise context, franchisor owes no special fiduciary duty apart from trustee duty to account for wrongful diversion of invested funds); *Weight Watchers of Quebec,*

*Ltd. v. Weight Watchers International,* 398 F.Supp. 1047, 1053–54 (E.D.N.Y.1975) (in absence of contractual specification that objective "reasonableness" standard is to govern relations between the parties, subjective "good faith" test applies); *Shaeffer v. Collins,* [1980–81] Trade Cases (CCH), ¶ 63,-666 at 77,577 (E.D.Pa.1980) (no fiduciary duty in ongoing restaurant franchise context); *Picture Lakes Campground, Inc. v. Holiday Inns,* 497 F.Supp. 858 (E.D.Va.1980) (rejecting plaintiff's contention that cause of action for breach of fiduciary duty is implicit in state regulation of franchise operations; cases finding such a duty characterized as "distinct minority"); *William C. Cornitius, Inc. v. Dayton Enterprises,* 276 Or. 747, 556 P.2d 666, 670 (summary judgment for defendant proper where state law does not explicitly impose fiduciary "reasonableness" standard on lease renewal decisions of franchisor).

As the district court noted, the plaintiffs' reliance upon *Arnott v. American Oil Co.,* 609 F.2d 873 (8th Cir. 1979), is misplaced. First, *Arnott* arose in the context of franchise termination, rather than from harm alleged to have accrued from an ongoing relationship. Second, although the *Arnott* court found a "fiduciary" relationship to inhere in the franchise relationship, an inspection of the jury instruction upheld there

indicates that nothing more than well-accepted contract principles were thereby imposed.[4] In short, plaintiffs have failed to identify a single case in which the courts have imposed a fiduciary obligation upon the franchisor in view of a factual pattern similar to that present in the case at bar.[5]

Plaintiffs urge several additional reasons for reversing the district court's grant of summary judgment on count eleven. First, they argue that the district court's ruling evinces thinking which is "out of step" with that of one commentator who has urged in numerous articles the injection of a fiduciary standard into the franchising context.[6] We are unpersuaded, however, that it is the role of a federal district court, interpreting *state common law,* to effect dramatic innovation in that body of law. *See Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. at 203, 76 S.Ct. at 276.

Second, they argue that Wisconsin common law already imposes fiduciary obligations upon one who is receiving money for the purpose of providing services or investment for the benefit of another, citing *Rippe v. Stogdill,* 61 Wis. 38, 20 N.W. 645 (1884). That case does no more, however, than state the traditional justification for imposing fiduciary obligations on financial agents who hold themselves out to a passive investing public as experts in financial mat-

---

**4.** The instruction noted that "the law requires that neither party exert undue influence or pressure upon the other" or "deal without good faith." *Arnott,* 609 F.2d at 881 n.6.

**5.** Pursuant to Circuit Rule 11, plaintiffs have brought to the attention of the court the recent decision in *ABA Distributors, Inc. v. Adolph Coors Co.,* 542 F.Supp. 1272 (W.D.Mo.1982). That case, however, merely found breach of a "fiduciary" obligation in a franchisor's termination of a distributorship without notice. An examination of that opinion also reveals that the common law "fiduciary duty" found amounts, as in *Arnott,* to no more than a duty of "good faith and fair dealing" in conformance with well-settled contract principles. *See ABA,* 542 F.Supp. at 1285, 1286.

Nothing in *Matter of Sbarro Holding, Inc. (Yuan),* Business Franchise. Guide (CCH), ¶ 7771 at 12,969–72 (S.Ct., N.Y. Trial Term, King's County, 1981), cited by plaintiffs in their reply brief, affects this conclusion. The *Sbarro* court, although alluding to the existence of a fiduciary obligation, merely enforced an exist-

ing contractual obligation between the parties, noting that the "more decisive" ground for its holding was the standard equitable procedure of piercing the corporate veil. *Sbarro,* at 12,-971. And to the extent that a fiduciary relationship was found to exist, that finding was based on facts demonstrating an exceptionally "awesome," one-sided business relationship (*e.g.,* the franchisee was a recent immigrant family with no business experience; there was also strong evidence of actual overreaching by the franchisor, such as encouraging the franchisee not to obtain legal advice), none of which are present here. *Sbarro,* at 12,970.

**6.** *E.g.,* H. Brown, *Franchising: A Fiduciary Relationship,* 49 Texas Law Review 650, 655 (1971); Brown and Cohen, *Franchise Equities,* 63 Mass.Law Review 109 (1979). We find it significant that at no point do these articles suggest a firm precedential basis for finding such a duty; the analysis merely argues for a desirable prospective judicial policy.

ters and are thereby entrusted with large sums of money to invest with wide discretion. *Rippe,* 61 Wis. at 42, 20 N.W. 645. It would be a significant leap to apply this well-settled rule to a relationship in which highly motivated entrepreneurs enter into ongoing business dealings with franchisor corporations, however large. We cannot say that the district court erred in refusing to jump.

Third, the plaintiffs point to a single sentence in a White Hen Franchise promotional brochure which details the accounting services provided by White Hen under the franchising agreement: "Acting as your agent, this same program pays your bills and prepares your store payroll on a weekly basis." Plaintiffs would have this court impute to the term "agent" there its technical, legalistic variant meaning, thereby triggering an enforceable fiduciary obligation. Such a step would flatly contradict the well-settled principle of contract interpretation that courts will construe words of a document in accordance with their usual, common and ordinary meaning, with a view to the situation and relation of the parties at the time. *Hong Kong Export Credit Ins. Corp. v. Dun and Bradstreet,* 414 F.Supp. 153 (S.D.N.Y.1975); *Continental Bus Systems, Inc. v. NLRB,* 325 F.2d 267 (10th Cir. 1963). We are not convinced that the district court erred in refusing to find that White Hen was understood to have bound itself to the legal rigors of an agency relationship through the medium of an illustrated introductory advertising pamphlet.

In sum, we find no error of law in the district court's failure to impose a fiduciary obligation on White Hen that would command it to provide a full accounting to plaintiffs. For this reason, we affirm its grant of summary judgment in favor of defendant on count eleven.

### III

The plaintiffs also argue that the district court erred in granting the defendant's motion for summary judgment on counts four through ten in the complaint. The district court granted the defendant's motion in two unpublished memorandum decisions. As we noted above in connection with the grant of summary judgment in count eleven, because a "federal court enforcing a state-created right in a diversity case is . . . in substance 'only another court of the State,'" *Bernhardt,* 350 U.S. at 203, 76 S.Ct. at 276 (1955), (quoting *Guaranty Trust Co. v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945)), the district court's construction of state law is given special weight, where the state courts have not previously addressed the issue, *Bernhardt,* 350 U.S. at 204, 76 S.Ct. at 276. For this reason and because the district court's decisions present a thorough and well-reasoned analysis of the issues the plaintiffs raise on this appeal, we incorporate them as the basis of our decision.

We note only that, while the plaintiffs repeatedly argue on appeal that the district court improperly resolved disputed issues of material fact in reaching its conclusions, the district court's analysis of the issues refutes that contention. It is clear that, in granting the motion, the district court accepted the plaintiffs' allegations as true, *Bishop v. Wood,* 426 U.S. 341, 347 n.11, 96 S.Ct. 2074, 2079 n.11, 48 L.Ed.2d 684 (1976), but concluded that, as a matter of state law, the plaintiffs were not entitled to recover.

For the foregoing reasons, as well as those enunciated in the district court's opinions, the entry of summary judgment is

AFFIRMED.