**SKOKIE GOLD STANDARD LIQUORS, INC., et al., Plaintiffs,**

v.

**JOSEPH E. SEAGRAM & SONS, INC., et al., Defendants.**

No. 81 C 2406.

United States District Court, N.D. Illinois, E.D.

Sept. 6, 1983.

Jay L. Schultz, Chicago, Ill., for plaintiffs.

Patrick W. O'Brien, P. Terrence Buehler, Louis L. Biro, Shelly B. Kulwin, James E. Hastings, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Eleven affiliated corporate plaintiffs (collectively "Gold Standard"[1]) originally filed

---

1. Because it will facilitate this background description without creating any possible confusion, "Gold Standard" will be used interchangeably to denote both the eleven original plain-

this antitrust action April 29, 1981. Thirteen months later[2] Gold Standard moved alternatively (1) to amend the complaint to add class allegations or (2) for voluntary dismissal without prejudice as to two plaintiffs, Ridge Gold Standard, Inc. ("Ridge") and Cheese Chalet I, Ltd. ("Cheese Chalet"). Those two plaintiffs wanted to intervene in a class action then pending in Judge Leighton's court, *Vogt's Wine Shop, Inc. v. Joseph E. Seagram & Sons, Inc., et al.,* 82 C 89. On June 30, 1982 this Court granted such voluntary dismissal without prejudice, on conditions intended to avoid any prejudice to defendants were Ridge and Cheese Chalet permitted to enter the *Vogt's* case.

On November 8, 1982 Ridge and Cheese Chalet, pursuant to leave granted by Judge Leighton, filed an amended complaint in *Vogt's* containing class action allegations. Thereafter the *Vogt's* defendants moved for summary judgment before Judge Leighton on the ground Gold Standard was splitting its cause of action between two courts.

On May 2, 1983 Judge Leighton decided to grant defendants' motion, stating judgment would be entered on the date he filed a Memorandum. To date that order of judgment and Memorandum have not been filed.

On May 13, 1983 (over two years after this action was originally brought, and after an enormous amount of discovery—both on an expedited basis before the preliminary injunction hearing and on a less pressure-packed basis during the ensuing 21 months)

Gold Standard moved (1) to add class allegations to the Complaint and (2) to allow Van Allen Robinson ("Robinson") to intervene as a class representative. Robinson seeks money damages (thus reinjecting for all class members except Gold Standard the issues waived at the outset of the preliminary injunction hearing two years ago). Defendants object that so amending the Complaint at this time would substantially prejudice them.

■ True enough, Fed.R.Civ.P. ("Rule") 15(a) counsels leave to amend pleadings should be "freely granted." But on the other side of the same coin, the standards for denying allowance of such a late amendment are that the opposing party will suffer undue prejudice by such allowance or that the delay has been "undue." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971); see *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord, Clark v. Universal Builders, Inc.,* 501 F.2d 324, 339–40 (7th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974).

■ From that perspective it is profitable to consider the Robinson motion and the Gold Standard motion separately in terms of the present posture of this action. Today the parties' discovery is really complete, with the final pretrial order very near at hand.[3] What effect would each motion have on the course of the litigation?

---

tiffs and the nine of them still remaining in the case (following the voluntary dismissal by two original plaintiffs, as described in the rest of this paragraph of the text).

2. In the meantime this Court, following extensive expedited discovery and a full-blown preliminary injunction hearing covering five days, had on December 14, 1981 entered lengthy Findings of Fact and Conclusions of Law denying the preliminary injunction sought by Gold Standard. At the opening of the hearing Gold Standard's counsel withdrew the Complaint allegations seeking damages (Dec. 14, 1981 Finding 11). That step was apparently taken to avoid any possible Seventh Amendment problems that would affect Gold Standard's effort to consolidate the hearing with the trial on the merits. On September 28, 1982 our Court of

Appeals affirmed denial of the preliminary injunction.

3. As might perhaps be expected, defendants engage in advocates' hyperbole by characterizing the case as "virtually on the eve of trial" (Ans. Mem. 1). "Eve of trial" is really a euphemism in the context of a case like this one. This Court sets cases for trial in the order in which they reach the final pretrial stage, so there is necessarily a substantial time gap between the close of discovery and delivery of pretrial materials to this Court and the onset of the trial itself. But if new issues could be shoehorned into the case at this late stage, forcing *new* discovery and *new* revisions of the pretrial order and *new* pretrial conferences, Zeno's Paradox would set in and the arrow

Robinson's entry into the fray would inject the wholly new issues posed by damage claims, voluntarily withdrawn by Gold Standard at the very outset of this lawsuit.[4] Even leaving aside any questions of the timeliness of Robinson's effort to intervene under Rule 24(b) (see *NAACP v. New York,* 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973)), class damage claims mean a Rule 23(b)(3) class with all its attendant problems:

1. Class certification under Rule 23 itself requires a diversion of litigants' and courts' resources from the substantive focus of the litigation, with extended briefing (and likely discovery as well) on the various criteria for certification.

2. Even assuming the four prerequisites of Rule 23(a) pose no difficulty, there is considerable question whether the questions common to the class members do predominate over those affecting the individual class members as Rule 23(b)(3) requires. If defendants are held to have breached the antitrust laws, each individual retailer's damages are subject to separate factors and must be proved separately. This discretely bounded litigation would be converted into perhaps dozens or even hundreds of minitrials.

3. Rule 23(c)(2) mandates individual notice to class members in Rule 23(b)(3) actions. Though Gold Standard urges the identification of class members and their addresses offers no problem (because retail liquor establishments are licensed), the logistics of developing and transmitting class notices are substantial—another diversion from the lawsuit's main purpose of defining the parties' substantive rights.

4. Though Robinson says *he* would be content with Gold Standard's present discovery, incoming class members need not be. And *defendants,* faced with individual damage claims, are surely entitled to engage in discovery before they have to litigate those claims.[5]

It is hardly necessary to prolong the discussion. There are enough doubts the expanded litigation could meet the requirements of Rule 23(b)(3)—including its four specified factors—to justify this Court in eschewing the time-consuming and energy-diverting entry into the many unexplored areas at this late stage of the present controversy. Gold Standard may be right in saying the consequence of denial of Robinson's motion will be the commencement by him of a separate class action, but that is scarcely a reason for overcomplicating *this* lawsuit.

That leaves for consideration the proposed conversion of the Gold Standard injunctive action into a class action—a Rule 23(b)(2) claim. It is worth noting that in nearly two and a half years not one of the thousands of other putative class members (retail liquor licensees) has sought to join with Gold Standard before now.[6] Even apart from Gold Standard's doubtful ability to qualify the case for class treatment, from the perspective of the new class member

---

might never reach the target: the trial of the case.

**4.** Defendants argue Gold Standard should be foreclosed from such a strategic ploy for equitable reasons. Indeed such notions appear to underpin Judge Leighton's ruling in *Vogt's.* Absent a showing the case law supports such a judicial reaction to litigation tactics despite Rule 15(a)'s mandated liberality (and defendants have made no such showing), this Court has reached its decision without reference to that consideration.

**5.** In *Murphy v. White Hen Pantry Co.,* 691 F.2d 350, 353–54 (7th Cir.1982) our Court of Appeals held it was not an abuse of discretion to

deny filing of a complaint amendment that would have involved a new theory of liability and more discovery after discovery had been completed. Contrast *Clark v. Universal Builders,* where all the amendment did was to leave the issues as is, but to add as parties defendant the principals of the corporate defendant—persons who had really been managing the litigation all along.

**6.** That is a slight overstatement. Vogt's did commence, but promptly abandoned, its own action through the same counsel. And Robinson does now seek to become a late entry. But given the "numerosity" standard of Rule 23(a)(1), two are no better than none at all in meeting the relevant legal test.

there is little to choose between the present case and the prospective class action:

1. If injunctive relief is granted in this non-class action, non-party retailers will likely be the beneficiaries of that relief as well.

2. If defendants were instead to shape their conduct to meet Gold Standard's injunctive claims but not those of other similarly situated retailers, the latter could likely invoke offensive collateral estoppel if they sought to assert their own rights against defendants.

Once again the game is not worth the candle. Balancing the potential benefits to putative class plaintiffs[7] against the prejudice to defendants at this late stage of the proceedings, the scales tip heavily in defendants' favor.

*Conclusion*

Both motions for leave to amend the Complaint are denied. This action will proceed toward trial on its present issues.

---

7. Rule 23(b)(2) class certification, though perhaps more probable, is no more a certainty than Rule 23(b)(3) certification. In any case, determining the propriety of such certification would likewise require an excursion into all the class issues collateral to the substantive antitrust issues this lawsuit is really about.