**Kathleen BENNETT, et al., Plaintiffs,**

v.

**CENTRAL TELEPHONE COMPANY OF ILLINOIS, et al., Defendants.**

**No. 79 C 5000.**

United States District Court,
N. D. Illinois, E. D.

Aug. 2, 1982.

Thomas R. Meites, Lynn Sara Frackman, Mary Rose Strubbe, Meites & Frackman, Chicago, Ill., for plaintiffs.

Nina G. Stillman, Thomas G. Abram, Bruce R. Alper, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant Central Tele. Co.

Gilbert Feldman, Cornfield & Feldman, Chicago, Ill., for defendant Union.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Eight women plaintiffs have sued Central Telephone Company of Illinois ("Centel") and Local 336, International Brotherhood of Electrical Workers ("Union") individually and on behalf of a class of all current and former Centel employees. They allege employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17. Union has moved for summary judgment. For the reasons stated in this memorandum opinion and order its motion is granted.

Plaintiffs' lawsuit hinges on their claim that Centel maintains a sexually segregated work force, in which women are given lower paying office jobs while men are given higher paying plant jobs. Union contends even if such allegations are true Union is not the cause and is therefore not liable.

Plaintiffs' Complaint is phrased in broad terms, but it appears the following specific allegations are aimed at Union: [1]

1. Union has posted job vacancies for plant side positions on bulletin boards in areas where few women work (Complaint ¶ 6D).

2. Union refuses to arbitrate grievances brought by females while routinely arbitrating grievances brought by males (Complaint ¶ 8).

3. Union has retaliated against plaintiffs for protesting discriminatory employment practices (Complaint ¶ 13).

4. Section 8.06(b) of the collective bargaining agreement signed by Centel and Union (the "Agreement") restricts bidding on journeyman positions to journeymen. That clause discriminates against women because nearly all journeymen are male (Complaint ¶ 6B).

Each allegation will be examined separately.

### Posting of Employment Vacancies

 On the undisputed evidence Centel had sole responsibility for posting job vacancies. Accordingly plaintiffs' claim against Union for discriminatory job posting must be dismissed.

### Arbitration and Grievance Processing

At a certain point in the processing of an employee grievance, Union can determine whether to continue and take the claim through arbitration. Plaintiffs charge Union refuses to take female employees' grievances to arbitration, while it routinely does so for males. But plaintiffs have failed to provide any evidence in support of that claim; in fact the unrefuted evidence is directly to the contrary.[2] Union's Chief Steward Thomas Berger states by affidavit:

1. Since 1973 there have been a total of 29 arbitration awards rendered between Centel and Union, and female grievants were parties in 15.

2. In the period from 1975 through 1979, 36% of all grievances filed by women were withdrawn or dropped rather than being settled or arbitrated and 37% of all grievances filed by men were so treated.

 Plaintiffs next contend there is disparate treatment of grievances pursued by Union, which seeks greater or more meaningful settlements for males. In support plaintiffs point to one example in which a female employee's grievance was settled by a cease and desist order while a like grievance by a male was settled with a backpay award. But a surface comparison of two similar grievances does not raise a material

---

[1] Initially the Complaint alleges *both* defendants are guilty of a pattern and practice of discrimination. Following that are many allegations of discrimination by the undifferentiated "defendants." However not all the charges can implicate Union. For example, plaintiffs allege "defendants" never offered plaintiffs plant side positions at initial hiring. But the evidence demonstrates Union played no role in

hiring. This Court will limit its consideration to allegations specifically or logically linked to Union.

[2] On all the issues discussed in this opinion this Court has, as required on motions for summary judgment, drawn all reasonable inferences in favor of plaintiffs (the party opposing the motion).

issue of fact. Plaintiffs have wholly failed to demonstrate the award given to the female grievant was unfair or inequitable. To support their claim plaintiffs would have to provide at least (1) a particular instance in which a female received a discriminatorily unfair or insufficient award or (2) a statistical showing that in a large number of cases females receive lesser awards than males. Plaintiffs have furnished neither sort of evidence.

Finally plaintiffs assert Linda Murmann filed a 1978 grievance with Union that was never processed.[3] But again absent specific evidence that the grievance was not processed because it was filed by a woman, or as to a trend of unprocessed grievances brought by women, plaintiffs have failed to raise a factual issue. Moreover, two subsequent grievances filed by Murmann were processed and produced awards favorable to Murmann.

None of plaintiffs' asserted bases for this kind of claim has been substantiated. Their charges of discrimination in the arbitration and grievance process must also be dismissed.

### Retaliation

Plaintiffs have failed to present any evidence of retaliation by Union. That claim too must be dismissed.

### Section 8.06(b)

Section 8.06(b) was discussed extensively at pages 3–7 of this Court's June 11, 1982 memorandum opinion and order (the "Opinion"). This Court concluded a factual issue remained as to whether Section 8.06(b) was unnecessary and simply used to exclude women from plant positions.

3. Union has no record of that grievance ever having been filed.

4. There is no hint, for example, that Union did not seriously oppose Section 8.06 but used its alternative proposal merely as a bargaining tactic to obtain some other benefit in which it was really interested. Although Union gave up on a companywide bidding system when Centel refused, Union did obtain the provision under

Unions generally share responsibility for discriminatory effects of collective bargaining agreements they sign. *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1389 (5th Cir. 1978); *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1381–82 (5th Cir. 1974); *Peters v. Missouri-Pacific Ry. Co.*, 483 F.2d 490, 496–97 (5th Cir. 1973). But Union has made an interesting and novel argument in this case. In the 1972 contract negotiations Union proposed a system under which all job vacancies would be placed under a companywide bidding system. Centel rejected that proposal, instead agreeing only to a new provision (Section 8.17) under which office employees were given priority for apprentice positions through a newly created transfer procedure. Thus Union contends Centel must accept full responsibility for any discriminatory effects of Section 8.06.

None of the cases holding a union at least partially responsible for the provisions of a collective bargaining agreement involved a situation where the union had proposed an alternative provision under which the alleged discrimination would have been impossible. That proposal by Union in this case, with no counter showing by plaintiffs to support an inference of discriminatory intent on Union's part, might well be dispositive on this aspect of the case. *Pullman-Standard v. Swint*, —— U.S. ——, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

Even if a lesser showing were sufficient to impose Title VII liability, however, it would still at least require defendant to have caused the discrimination in some way. Union's demonstrated opposition to Section 8.06(b) negates any such causation, absent any contrary evidence sufficient to raise a factual dispute.[4] Plaintiffs have failed to show any nexus between Union and the discriminatory effects of Section 8.06(b).

which office employees receive priority for transfers to apprentice positions. Indeed the statistics show that the small infusion of women into plant side positions has taken place under that very provision. Thus all the evidence presented demonstrates Union sought in good faith to secure a companywide bidding procedure for all positions.

*Conclusion*

There are no genuine issues of fact as to Union, and it is entitled to a judgment as a matter of law. Its motion for summary judgment is granted, and it is dismissed from this action.