**Kathleen BENNETT, et al., Plaintiffs,**

v.

**CENTRAL TELEPHONE COMPANY OF ILLINOIS, et al., Defendants.**

No. 79 C 5000.

United States District Court, N.D. Illinois, E.D.

April 6, 1983.

Mary Rose Strubbe, Lynn Sara Frackman, Thomas Meites, Meites & Frackman, Chicago, Ill., for plaintiffs.

Thomas G. Abram, Nina G. Stillman, Bruce R. Alper, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant Central Telephone Company.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Eight women initially sued Central Telephone Company of Illinois ("Centel") and Local 336, International Brotherhood of Electrical Workers ("Union") individually and on behalf of a class of all current and former Centel female employees, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 as

amended, 42 U.S.C. §§ 2000e to 2000e–17.[1] Opinion IV at 7 certified a class "of all women employed by Centel on or after November 18, 1977 who have been denied the opportunity to obtain plant side positions or who have in any other way been directly affected by Centel's policy of maintaining a sexually segregated work force." Both plaintiffs and Centel have moved to clarify (or amend) that class definition.[2] For the reasons stated in this memorandum opinion and order the class definition is amended in limited part as provided below.

*Background*

Opinion IV at 2 stated:

Plaintiffs' claims can really be broken down into three categories: (1) discriminatory steering at the time of hiring, (2) continued efforts to prevent women from obtaining plant side positions and (3) miscellaneous claims. As [Opinion I] found, the first two categories are two manifestations of a single alleged wrong: Centel's policy of preventing women from working in plant side positions. Accordingly the certification question retranslates into whether this Court should also include for class treatment the various other claims asserted by plaintiffs.

Opinion IV then surveyed (*id.* at 3) five claims "not stated as related to [plaintiffs'] inability to obtain plant side positions."

This Court found four of those claims unsuited for class adjudication because they involved too few individuals (*id.* at 4, ¶¶ 1, 3–5). Those determinations are not now challenged by the parties.

As to the other claim Opinion IV said (*id.* ¶ 2):

Centel's claimed better compensation for male salaried employees than female salaried employees stems primarily from the plant side v. office side dichotomy. It is really just one of the harmful effects of Centel's alleged failure to place women in plant side positions.

What is now at issue is the relationship between Opinion IV's class definition and plaintiffs' now-asserted claims of sexual discrimination in salaried compensation.

Plaintiffs' Mot. ¶ 2 wants the class definition to embrace the claims of salaried women whose alleged unequal treatment stems not "from denial of access to plant side hourly positions" but rather from "an absolute preference for men rather than women at second and higher supervisory positions." Plaintiffs thus wish the class definition to embrace discrimination between salaried men and women even when they have had comparable plant side experience or even when plant side experience was irrelevant to obtaining their supervisory positions (*id.* ¶ 3).

Centel's Mot. ¶¶ 2–3 first seek to limit the class definition so it includes only claims

---

1. This opinion follows a series of 1982 opinions and rulings by this Court. Its June 11 memorandum opinion and order ("Opinion I") denied Centel's partial summary judgment motion. Its August 2 memorandum opinion and order ("Opinion II," 545 F.Supp. 893) granted Union's summary judgment motion. Then on August 4 three memorandum opinions and orders were issued:

    1. "Opinion III" denied Centel's motions for reconsideration of Opinion I and for certification of an interlocutory appeal under 28 U.S.C. § 1292(b).
    2. "Opinion IV" granted plaintiffs' motion for class certification.
    3. "Opinion V," 545 F.Supp. 891, granted Centel's motion to dismiss Arline Orchowski ("Orchowski") as a named plaintiff.

    On September 7 Orchowski, having followed the course suggested in Opinion V, was reinstated by this Court as a named plaintiff. Fi-

nally, this Court's October 26 memorandum opinion and order ("Opinion VI") granted Centel's and plaintiffs' motions to reconsider Opinion II, reinstating Union as a defendant as to certain claims.

2. Plaintiffs' and Centel's motions ("Pl.Mot." and "Def.Mot.") were filed at the end of August 1982. On September 3 each side answered the other's motion ("Pl.Ans.Mem." and "Def.Ans. Mem."). On September 7 this Court entered and continued the motions pending completion of additional discovery. On January 10, 1983 plaintiffs filed a supplemental memorandum ("Pl.Supp.Mem."), followed on March 4 by both Centel's response ("Def.Supp.Ans.Mem.") and the parties' Stipulation ("Stip."). On March 23 plaintiffs filed a final reply brief ("Pl. R.Mem."), and on March 30 this Court granted Centel leave to file a limited and final response ("Def.R.Mem.").

involving employment practices at Centel's Park Ridge-Des Plaines District. Plaintiffs do not object to that limitation if the geographic term "District" is not read to exclude so-called "divisional" salaried positions in that area (Pl.Ans.Mem. 1–2). Centel's geographic limitation is therefore accepted as explicated by plaintiffs.[3]

Centel's Mot. ¶¶ 6–7 also confirm it accepts this Court's clarification of the class definition, given in open court August 4, 1982 (Tr. 6, emphasis added):

I am certifying the class of all women employed by Centel on or after November 18, 1977, who have been denied the opportunity to obtain plant-side positions, or who have in any other way been *directly affected* by Centel's policy of maintaining a sexually-segregated work force. *I included the last part because as counsel properly points [out], people may be deterred from seeking positions and the earlier provision would be unduly narrow.*

Thus Centel admits the class definition includes women deterred from seeking plant side positions as well as women actually denied those positions.

But Centel's Mot. ¶¶ 7–9 also ask clarification or amendment of the class definition to exclude discriminatory compensation, promotion, or job assignment claims unrelated to the denial of plant side positions to women. That would restrict the class definition to claims deriving from "denial of the opportunity to obtain plant side positions" (*id.* at 6 ¶ (b)). Conversely plaintiffs again want to assert the claims of women denied access to or equal treatment in salaried positions "because of lack of plant side experience or otherwise" (Pl.Ans.Mem. 5).

### Salaried Women's Claims

Centel's Ans.Mem. 3 misleadingly urges Opinion IV "denied certification for Plaintiffs' allegation that Centel paid women salaried supervisors less than male plant supervisors." *See also* Def.Supp.Ans.Mem. 3. As already quoted, Opinion IV at 4 ¶ 2 noted the Complaint's claims of discrimination between male and female salaried employees addressed "really just one of the harmful effects of Centel's alleged failure to place women in plant side positions." It cannot be said that discriminatory salaried employee compensation claims deriving from Centel's segregative (plant v. office) employment practices were "denied certification." Based on the Complaint as applied in Opinion IV, those claims are simply possible ingredients in measuring the damages suffered by certain class members.

Accordingly the real question is how Opinion IV's class definition relates to compensation, promotion and job assignment claims that do not derive from "the plant side v. office side dichotomy" (Opinion IV at 4, ¶ 2). Plaintiffs' Supp.Mem. 2–3 argues this Court was misled by the prior briefing into subsuming claims of "systematic discrimination at the salaried level" under the general allegation of "segregation at the hourly level," thereby losing in the shuffle any salaried claims unrelated to plant-clerical segregation. On that premise they submit evidence (*id.* at 4–9) suggesting Centel's discriminatory practices as to segregation, discriminatory compensation and discriminatory job assignment among its salaried employees. Those evidentiary submissions have unleashed a flood of charts, statistics and surrounding arguments that give the memoranda on the present motions the look of briefing on motions for summary judgment. *See* Def.Supp.Ans.Mem. 7–15; Stip. ¶¶ 1–4; Pl.R.Mem. 3–8, 10–13; Def.R.Mem. 1–2.

But there is a threshold question hinted at by Centel's Supp.Ans.Mem. 6–7. Whatever class is certified *in* this action, it must be a class asserting the allegations and claims *of* this action—of the Complaint.

---

**3.** It is clear from the Second Amended Complaint (the "Complaint") and its predecessor pleadings that plaintiffs never intended to launch a full-scale attack on Centel's practices elsewhere than in the Park Ridge-Des Plaines District. By the same token, of course this Court never meant to expand the potential scope of this litigation beyond the scope of the Complaint. Thus this first item is really a clarification of, rather than a limitation on, the class.

Opinion IV defined the class so as to exclude asserted claims involving too few claimants. *Included* claims must both involve numerous claimants *and* be pleaded in the Complaint.

Plaintiffs' R.Mem. 8–9 cites several passages of the Complaint that, in isolation, might perhaps be read broadly to allege general discrimination among salaried employees. But all those passages occur in contexts (1) limiting the allegations to discriminatory effects of the plant-clerical dichotomy or (2) calling attention only to isolated events:

1. Complaint ¶ 5 introduces "The Acts Complained Of" in general terms. However, Complaint ¶ 6 explicates Paragraph 5 by describing the practice and ramifications of restricting plant work to men and clerical work to women.

2. Complaint ¶ 9 alleges Centel (a) maintains "a sexually segregated salaried work force" and (b) denies "women the comparable salaried job opportunities made available to men." That paragraph then goes on to allege the "segregation of salaried jobs by sex is caused in part" by practices related to the plant-clerical dichotomy, and subparagraphs (A) and (B) consistently assert only instances of discrimination that clearly derive from that dichotomy.

3. Complaint ¶ 10 does allege "unequal treatment of women continues in other salaried positions." But it describes such unequal treatment only in reference to an isolated incident—an incident Opinion IV at 4, ¶ 1 found involved too few claimants for class treatment.

4. Complaint ¶ 11 alleges discriminatory compensation of salaried female employees. However, it goes on to allege discrimination as shown (a) by comparing plant and clerical supervisory salaries or (b) in an episode related to the same isolated incident discussed above.

When the allegations of the Complaint are read in context, it is obvious plaintiffs' alleged discrimination among Centel's salaried employees was shown "in part" by ramifications of the plant-clerical work force segregation and "in part" by various isolated instances of discrimination. No other "part" was even suggested by the factual allegations. Contrary to plaintiffs' R.Mem. 9, neither Complaint ¶ 9 nor the Complaint as a whole asserts broad-based claims of discrimination unrelated to the plant-clerical dichotomy. Plaintiffs now wish this Court to infer from the phrase "in part" a meaning they did not really imply.

What is really afoot here is plaintiffs' effort in effect to amend their Complaint dramatically, though in the guise of a motion to clarify or amend Opinion IV's class definition. Fairly read, the Complaint alleges (1) discriminatory employment practices deriving from the segregation of the plant and clerical work forces and (2) certain claims deriving from isolated incidents clearly not suitable for class litigation. Opinion IV thus reflected an accurate reading of the Complaint itself. *See* Opinion IV at 3. This Court was not at all confused by the briefing on the class certification motion: Instead, plaintiffs have only recently focused on possible allegations they previously did not assert.

This action is nearly 3½ years old, and the Complaint has already been amended twice. Plaintiffs are represented by experienced counsel, who shaped their lawsuit deliberately. They cannot now enlarge the scope of the litigation—effectively alter its basic course—so dramatically. Major discovery efforts have proceeded over the course of some three years (both by EEOC and by plaintiffs). To allow what is really a new lawsuit to be filed now would be disruptive, would trigger large-scale new discovery and likely require a substantial part of the already-completed discovery to be gone over,[4] and would generally disserve

---

**4.** Indeed one of the telltale hallmarks confirming the shift in scope now sought by plaintiffs is that they had to defer the briefing schedule on the current motion to permit them to undertake discovery they said they needed to support

the enlarged class. Had the now-asserted claims been on their agenda from the beginning (as they now imply), their *ongoing* discovery would have been directed to those issues as well, and a full-blown special discovery sched-

the interests of justice.[5]

It must be stressed again that the Complaint, stripped (as it is) of the claims held non-certifiable, does not encompass what plaintiffs seek to inject in the guise of a changed certification. This is no more and no less than a Rule 15(a) motion, and leave should not be given "freely" at this advanced stage of the litigation when prejudice to Centel is so apparent. *See Murphy v. White Hen Pantry Co.,* 691 F.2d 350, 353–54 (7th Cir.1982). Plaintiffs and their experienced counsel bounded their own lawsuit, and they have shown no reason to change the boundaries so dramatically now.

### Conclusion

For the reasons stated Opinion IV's class certification is amended to read:

> This Court certifies a class of all women employed by Central Telephone Co. in its Park Ridge-Des Plaines District on or after November 18, 1977 who have been denied the opportunity to obtain plant side positions or who have been otherwise adversely affected by the lack of opportunity to obtain plant side positions.

---

ule would have been unnecessary. In the same vein, the parties' October 22, 1982 joint submission preparatory to a Fed.R.Civ.P. ("Rule") 26(f) conference reflects the fact most discovery unrelated to the present class certification issue had already been completed. Under this Court's procedures the completion of discovery triggers the due date for the parties' final pretrial order, which in turn establishes the case's priority for trial. Thus plaintiffs' current effort to expand the controversy would deprive defendants of their opportunity for a far earlier trial of this already old lawsuit.

**5.** Similarly plaintiffs' R.Mem. 9 n. 7 for the first time cites an October 1983 EEOC charge by former Centel employee Patricia Eskrich ("Eskrich") as an illustration of Centel's discrimination against salaried women. Eskrich may very well have a good claim to assert in an action against Centel, but plaintiffs incorrectly assume they may at any time shoehorn into *this* action whatever claims they happen to discover.