**CHICAGO RIDGE THEATRE LIMITED PARTNERSHIP, a limited partnership, and F & F Management Co., a corporation, Plaintiffs–Appellants,**

v.

**M & R AMUSEMENT CORP., et al., Defendants–Appellees.**

No. 87–2270.

United States Court of Appeals, Seventh Circuit.

Argued March 28, 1988.

Decided Aug. 24, 1988.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 2, 1988.

Sheldon O. Collen, Epton, Mullin & Druth, Ltd., Paul E. Slater, Sperling, Slater & Spitz, Chicago, Ill., for plaintiffs-appellants.

James G. Hunter, Jr., Latham & Watkins, Robert W. Bergstrom, Bergstrom, David & Teeple, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and CUDAHY and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

This is an antitrust suit by the owners and operators of the Chicago Ridge Theatre (the "Chicago Ridge"), a motion picture theater in the Chicago area, against the owners and operators of the Evergreen Theatre (the "Evergreen"), another Chicago area movie house, and six motion picture distributors. The complaint charges a conspiracy to license movies to the Evergreen for an exclusive "first run" free and clear of any run made available to the Chicago Ridge. The matter was tried to the court, which entered judgment for the defendants at the close of the plaintiffs' case. *See* Fed.R.Civ.P. 41(b). The plaintiffs appeal and we reverse and remand.

I.

The Chicago Ridge Theatre Limited Partnership is the lessee and operator of a four-screen movie theater, the Chicago Ridge, at 95th Street and Ridgeland Avenue, just southwest of Chicago in Chicago Ridge, Illinois. This partnership is affiliated with F & F Management Company which performs certain management functions for it. We shall refer to these entities collectively as the "plaintiffs." In 1982, the plaintiffs filed an antitrust suit under section 1 of the Sherman Act, 15 U.S.C. § 1 (1982), seeking injunctive relief and treble damages pursuant to sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26 (1982). Named as defendants were the Evergreen Theatre Corporation and the M & R Amusement Corporation, the owners and operators of the Evergreen. The Evergreen is located on 95th Street in Chicago, 6.1 miles east of the Chicago Ridge. Additional defendants are six distributors of motion pictures (Columbia, Embassy, Paramount, United Artists, Universal and Orion).[1] Late in March 1981, several of the plaintiffs' representatives met with representatives of the Evergreen's operator. At that time, the Evergreen representatives made it clear that they would not play films at the Evergreen "day and date" (i.e., simultaneously) with a showing of the same films at the Chicago Ridge. At the request of the Evergreen's operator, each distributor defendant agreed that the Evergreen would receive the first run[2] of any picture licensed to be shown at the Evergreen, to the exclusion of the Chicago Ridge. That is, the Evergreen would receive "clearance" over the Chicago Ridge with respect to films played at the Evergreen. The distributor defendants knew of M & R Amusement Corporation's refusal to play "day and date" with the Chicago Ridge.

The Chicago Ridge was constructed in 1981 and consisted of three (later four) separate auditoriums for the showing of

---

1. A motion picture producer (Group One Films, Inc.) was named as a defendant but was subsequently voluntarily dismissed by the plaintiffs.

2. The "first run" of a film refers to its exhibition immediately after release, when most films earn the bulk of their revenues.

movies. The plaintiffs claim that they would not have expended capital to build the Chicago Ridge had they known that their new entrant would be precluded from getting attractive first-run films because of the clearance granted to the Evergreen. The parties agree that the first-run exhibition of motion pictures is the cream of the exhibition business.

The complaint demanded treble damages as well as a temporary and permanent injunction prohibiting the defendants from granting the Evergreen a clearance over the Chicago Ridge for first-run films. The theory of the plaintiffs' case is that it is unlawful to grant a clearance between theaters if they are not in substantial competition. Supplemental Appendix of Appellants at 11, 30 (hereinafter "Plaintiffs' Appendix"). Plaintiffs argue that this is the teaching of *United States v. Paramount Pictures Corp.*, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), which has generally been thought to be the controlling case in the area of motion picture distribution clearances. The plaintiffs also relied on a conspiracy theory, described by the distributor defendants as "coerced acquiescence." In essence, plaintiffs alleged a series of vertical agreements made jointly between each of the six distributor defendants and the Evergreen's operator, motivated by the "circuit buying power and aggressiveness" of that operator. I Supplemental Appendix of Defendants–Appellees at 78, 82. According to this theory, the defendant distributors agreed with the Evergreen's operator to refuse to license the Chicago Ridge for first-run films for which the Evergreen had a first-run license.

The defendants filed motions for summary judgment denying the conspiracy allegations and asserting that the plaintiffs had affirmatively proved that there was substantial competition between the theaters, which would make clearance a permissible competitive action. In January 1983 the plaintiffs withdrew their motion for a preliminary injunction and in February of that year the district court denied summary judgment and narrowed the issues for trial. The court accepted the plaintiffs' position (with which the defendants apparently

agreed) that "a clearance can never be justified between two theaters not in substantial competition." *Chicago Ridge Theatre Ltd. Partnership v. M & R Amusement Corp.*, No. 82 C 3141, mem. op. at 13 (N.D.Ill. Feb. 22, 1983). The court disagreed with the plaintiffs' assertion that the agreement to ensure clearance for the Evergreen over the Chicago Ridge could be held unlawful without an inquiry into its reasonableness. The district court stated:

> When we examine defendants' conduct under the rule of reason, we find that plaintiffs' conspiracy theory collapses into its second theory [lack of competition between the theaters]. The only reason plaintiffs suggest that the clearance is unreasonable is that the Evergreen and the Chicago Ridge are not in substantial competition. This is plaintiffs' second, supposedly independent theory of liability.

*Id.* at 12. The district court therefore ordered a trial limited to the following issues:

> (1) Has M & R [the Evergreen's operator] and/or the Evergreen agreed with one or more of the other defendants that the Evergreen would receive a clearance over the Chicago Ridge? (2) Did plaintiffs adequately demand that they be licensed day and date with the Evergreen until the point at which further demands were futile? (3) Are the Evergreen and the Chicago Ridge in substantial competition?

*Chicago Ridge Theatre Ltd. Partnership v. M & R Amusement Corp.*, No. 82 C 3141, mem. op. at 2 (N.D.Ill. Nov. 6, 1984).

The case was tried to the court without a jury in January 1985. At the beginning of the trial the district court explained to counsel that in a nonjury case, if a motion for a finding is made by the defendants at the close of the plaintiffs' case, the district court need not view the evidence in the light most favorable to the plaintiffs but instead may weigh the evidence and assess the credibility of the witnesses. The burden of persuasion is on the plaintiffs; if at the close of the plaintiffs' case the court is not persuaded by the plaintiffs' submissions, the court should find for the defend-

ants. *See* Fed.R.Civ.P. 41(b); *see also Furth v. Inc. Publishing Corp.*, 823 F.2d 1178, 1179 (7th Cir.1987). In accordance with this framework, at the close of the plaintiffs' case, the court scheduled argument on the defendants' Rule 41(b) motions to dismiss, and after hearing argument took the matter under advisement. In July 1987 the court issued its memorandum opinion and order entering judgment for the defendants.

## II.

█ The controlling issue upon which the district court's decision rests is its determination that the Chicago Ridge and the Evergreen theaters are in substantial competition. In reaching that conclusion, the district court relied explicitly upon the "testimony" of the defendants' three expert economic witnesses, Stephen Shavell, Michael Baumgardner and James Folsom, as well as upon the plaintiffs' witnesses. Unfortunately, the defendants never put on their case and their witnesses did not in fact testify. The defendants' evidence upon which the court relied was merely prefiled testimony of the three expert witnesses which in fact had never been received in evidence. The witnesses were never sworn in open court, never identified the testimony as their own and were never subjected to cross-examination.

The district court stated:

Defendants on the other hand *introduced the testimony* of Stephen Shavell, professor of law and economics at Harvard Law School ...; James Mack Folsom, a Ph.D. in economics ...; and statistician and psychologist Michael H. Baumgardner, a Ph.D. in social psychology and quantitative methods....

*Chicago Ridge Theatre Ltd. Partnership v. M & R Amusement Corp.*, No. 82 C 3141, mem. op. at 9 (N.D.Ill. July 14, 1987) (hereinafter "1987 Opinion") [available on WESTLAW, 1987 WL 13990] (emphasis added). If the district court did in fact rely substantially on this unintroduced testimony in reaching its decision holding against the plaintiffs, the plaintiffs were denied due process of law and there must be a new trial or other proceedings.

The defendants make a valiant effort to show that the district court relied only upon the plaintiffs' own evidence in finding that the two theaters were in substantial competition with each other, or that even if the court erred, the unintroduced evidence was merely cumulative and the decision may stand without it. The defendants primarily assert that the district court did not depend upon any unintroduced evidence in making the finding in question. They quote certain excerpts from the district court's opinion that seem to support their view of the case:

Thus, whether Chicago Ridge plays day and date with the Evergreen as to all of its auditoria or only as to one auditorium, *plaintiffs' own study* [see *infra* p. 7] shows that the Evergreen will suffer a substantial loss of patronage, revenue, and profits.

. . . .

In short, *plaintiffs'* evidence shows the existence of substantial competition between the Evergreen and the Chicago Ridge.

1987 Opinion at 11, 12 (emphasis in first paragraph supplied). The defendants argue that the references in Judge Marshall's opinion to the testimony of Shavell, Folsom and Baumgardner do not show reliance on the unintroduced evidence and that the district court's statement that the testimony of the defendants' three expert witnesses was introduced constitutes harmless error.

Unfortunately, our reading of Judge Marshall's opinion does not support such a conclusion. Judge Marshall, in his opinion, discusses certain evidence that he seems to attribute to a study by the plaintiffs' witness, Dr. Bradburn. *Id.* at 10–11. But much of the evidence in question, although ultimately based on Bradburn's data, is analyzed and interpreted in the defendants' unintroduced testimony to yield the results upon which Judge Marshall relies. And this expert interpretation (unintroduced in evidence) is not the same as Bradburn's. For example, the 20% figure upon which the district court relied in estimating the Evergreen's loss of admissions on a given film from day and date exhibition with the Chicago Ridge, *see id.* at 11, is derived from Dr. Shavell's analysis of Dr. Brad-

burn's Table 8. Record 333 at 25, 35, 61 (Shavell testimony). Dr. Bradburn's own estimate of the lost admissions on one movie played day and date with the Chicago Ridge would be only 7–8%.[3] Although Judge Marshall's opinion makes no reference to the fact, Shavell's unintroduced loss estimates for the Evergreen are supported by Professor Folsom's unintroduced testimony. Record 332 at 15 (Folsom testimony).

Dr. Shavell also supplied the analysis underlying the court's conclusions about "racial tipping," Record 333 at 36–42 (Shavell testimony), and the opinion refers to this testimony as "persuasive." 1987 Opinion at 11. There appears to be no source in the record for the district court's observations on this subject other than Shavell's unintroduced testimony.

Moreover, the section of the district court's opinion that discusses the presumed overlap in geographic areas from which the two theaters draw patrons relies upon various statistics drawn from the unintroduced testimony. Thus, for example, Chicago, Oak Lawn, Burbank, Chicago Ridge and Evergreen Park provide 82.4% of the patrons at the Evergreen while they supply 59.4% of the patrons at the Chicago Ridge. *Id.* These facts are attributable to Dr. Shavell's testimony, in which he analyzes a survey conducted by a potential plaintiffs' witness, who did not testify. Record 333 at 46–47 (Shavell testimony). Further, the district court cites by name and with approval the unintroduced testimony of witnesses Folsom and Baumgardner in support of the conclusion that there is substantial competition between the Evergreen and the Chicago Ridge. 1987 Opinion at 12–13. In addition, only the defendants' experts

Shavell and Baumgardner offered the opinion that the percentages of regular Chicago Ridge patrons who sometimes attended the Evergreen and Evergreen regulars who sometimes attended the Chicago Ridge demonstrated substantial competition. Record 333 at 10 (Shavell); Record 332 at 9–10 (Baumgardner). This unintroduced conclusion was apparently relied upon by Judge Marshall. 1987 Opinion at 10. There does not seem to be any way to escape the conclusion that the district court relied substantially on the defendants' unintroduced testimony in ruling against the plaintiffs on the merits. Although certainly inadvertent, this procedure was a denial of due process and the case must be remanded for further proceedings.

The mere fact that the district court asserted that the *"plaintiff's* evidence shows the existence of substantial competition between the Evergreen and the Chicago Ridge," *id.* at 12 (emphasis in original), is not enough to cure the error of reliance on the defendant's unintroduced evidence. Whatever may be recited in the opinion, the district court appears in fact to have relied substantially on facts, interpretations and conclusions garnered from unintroduced testimony. The cases cited by the appellees do not support a finding of harmless error here. *See, e.g., White v. Vathally,* 732 F.2d 1037, 1042 (1st Cir.) (harmless error where unintroduced evidence was "entirely cumulative"), *cert. denied,* 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984). It may be that Judge Marshall could have relied exclusively on Dr. Bradburn, but he did not do so. Judge Marshall apparently relied substantially on unintroduced and unsworn testimony and we cannot regard this as harmless even though the defendants' case appears to be very strong.[4]

---

**3.** Dr. Bradburn estimated that "on an annualized basis, if the two theatres should play 50% of available pictures day and date the best estimate of loss of patronage by the Evergreen Theatre would be in the area of 3.5–4%." Record 328 at 3; *see also* IV Transcript at 735–37 (Jan. 8, 1985) (Bradburn redirect).

**4.** The district court may, of course, on remand reweigh the properly admitted evidence, ignoring the evidence improperly considered in its prior review.

In this connection, the plaintiffs in their Response to the Petition of the Evergreen Theatre

Corporation and M & R Amusement Corporation for Clarification or in the Alternative for Rehearing, state:

Secondly, plaintiffs do not and will not object to another judge reviewing Dr. Bradburn's testimony on the grounds that the new judge did not "observe the witness' demeanor" or "have the opportunity to judge" his credibility. (Pet. 2) Plaintiffs agree to be bound by this representation to the court.

This court has relied upon this representation in its disposition of the Petition.

## III.

■ We might possibly affirm the judgment on the alternative basis that the plaintiffs failed to make adequate demands for the films they claim to have been denied. The district court found as follows:

Plaintiffs have also failed to prove that they made an adequate demand for the product. Indeed, the evidence shows that it is plaintiff who has refused to compete rather than defendants who have engaged in an agreement to restrain competition. Plaintiffs' representatives refused to commit themselves to exhibiting any particular film and refused to bid competitively for any particular film. Plaintiffs wanted the distributor defendants to "serve" the picture to them by making available to them every film distributed by the distributor defendants, whether or not it was licensed at the Evergreen.

1987 Opinion at 13.

We think these conclusions of the district court are not merely findings of fact subject to the clearly erroneous rule. They are mixed statements of law and fact involving not only the facts of what the Chicago Ridge did and said to obtain licenses but what the law would require of it to sustain a claim for illegal denial. We do not agree with the district court that the plaintiffs' demands and efforts to obtain films were so deficient in themselves as to defeat the claims of unlawful denial.

In the first place, competitive bidding was not a frequently used method of obtaining licenses for films. Richard Rosenfeld, testifying on behalf of the Evergreen, admitted that, between January 1, 1981, and July 2, 1982, 93 pictures were licensed by negotiations and only 3 by competitive bidding. Transcript at 948–50 (Jan. 10, 1985). There is considerable evidence that the plaintiffs expressed their interest in securing films through telephone conversations, requests, inquiries, offers and demands for particular pictures. The fact that they did not on occasion offer specific terms for a picture is not adequate ground in the present context for concluding that their demands or requests were legally insufficient. There is evidence in the record that terms were routinely set by the distributors and accepted by the exhibitors. *See, e.g.,* Transcript at 1447–49 (Jan. 16, 1985) (testimony of B. Stein).

■ In any event, demands become unnecessary when it is clear they will not be favorably received. The Evergreen's policy of requiring clearance over the Chicago Ridge was so well known and so unalterable that any special efforts of the Chicago Ridge to obtain simultaneous runs would have been futile, and the adequacy of demand must be viewed in that context. Transcript at 832–33 (Jan. 9, 1985) (Rosenfeld testimony).

The district court found:

At the request of M & R, each of the distributor defendants agreed with M & R that the Evergreen would receive exclusive first-run exhibition for any picture licensed to be shown at the Evergreen in advance of any run at Chicago Ridge. Evergreen would receive clearance over Chicago Ridge with respect to films played at the Evergreen.

1987 Opinion at 6–7. These policies and practices were well-known to all concerned and the formality of the Chicago Ridge's demands or bids for day and date licensing cannot be a decisive issue in light of the futility of the requests. This conclusion is consistent with the general rule that a rigid demand requirement is not appropriate in antitrust cases. *See Out Front Prods., Inc. v. Magid,* 748 F.2d 166, 169–71 (3d Cir.1984).

## IV.

It is not appropriate for us to attempt to resolve the other interesting substantive issues presented by this case, given the action's present incomplete posture. Both parties seem, for the most part, to have accepted the "substantial competition" test of *United States v. Paramount Pictures, Inc.,* 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), as the appropriate legal framework to be applied here, although plaintiffs also persist with their conspiracy theory even though it adds little to the lack of substantial competition claim. It is indeed true that *Paramount Pictures* is the last word from the Supreme Court directly addressing the antitrust ramifications of

clearances in the distribution and exhibition of motion pictures. However, a lot of water has passed under the bridge since 1948. The defendants suggest the availability of a more general mode of analysis based on less dusty Supreme Court and Seventh Circuit authority. Thus, the defendants argue:

> Also plaintiffs have not alleged or shown that defendants' conduct has had an adverse impact on competition generally and the proof is its opposite. The exhibition of different films at the Evergreen and Chicago Ridge promotes interbrand competition, with the product of different distributors competing for the consumer's attention and the consequent license fees resulting from admission receipts. *Continental T.V., Inc. v. G.T.E. Sylvania, Inc.,* 433 U.S. 36, 54–55 [97 S.Ct. 2549, 2559–60, 53 L.Ed.2d 568] (1977); *Valley Liquors, Inc. v. Renfield,* 678 F.2d 742, 745 (7th Cir.1982), *later proceeding,* 822 F.2d 656, 666 (7th Cir. 1987). It [the exhibition of different films at the two theatres] preserves alternative retail outlets for different producer-distributors and for potential additional producers, instead of foreclosing these retail outlets to additional competitive films by requiring all theaters to exhibit the same film simultaneously as plaintiffs demand.

> It is also apparent that here consumer welfare was benefited because the consumer had a choice of viewing different films at each of the theatres instead of having his choice limited by the simultaneous exhibition of the same film.

Distributor Defendants' Brief at 48; *see also Ralph C. Wilson Indus., Inc. v. Chronicle Broadcasting Co.,* 794 F.2d 1359, 1364, 1367 (9th Cir.1986).

Under this approach, according to the defendants, plaintiffs would have to (1) define the relevant market and (2) show that any distributor or exhibitor had such a dominant share of that market that it had the power to control prices. Since there has been no showing that analysis under the rule of *Paramount Pictures* and under *G.T.E. Sylvania* and its progeny would reach different results, we think it is inap-

propriate at this time to attempt to reconcile in the abstract these two threads of antitrust analysis. In theory, *G.T.E. Sylvania* might place more demands on the plaintiffs. But that is not certain and the new record generated on remand may provide a better basis for addressing this question than the present one.

The judgment is reversed and remanded for a new trial or for other proceedings not inconsistent with this opinion. Circuit Rule 36 shall apply on remand.

REVERSED and REMANDED.