**CHICAGO RIDGE THEATRE LIMITED PARTNERSHIP, et al., Plaintiffs,**

**v.**

**M & R AMUSEMENT CORPORATION, et al., Defendants.**

**No. 82 C 3141.**

United States District Court, N.D. Illinois, E.D.

Nov. 13, 1990.

Sheldon O. Collen, Epton, Mullin & Druth, Ltd.; Paul E. Slater, Sperling, Slater & Spitz; Altheimer & Gray; and Thresa M. Obringer, Chicago, Ill., for plaintiffs.

Robert W. Bergstrom, Ronald W. Teeple, John L. Leonard, Berstrom, Davis & Teeple, James G. Hunter, Jr., Latham & Watkins, Hedlund, Hunter & Lynch, Chicago, Ill., and Philip R. Toomin, Winnetka, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The plaintiffs have moved to amend their complaint to include an additional theory of liability. This alternative theory will be referred to throughout this opinion as the "modern rule of reason." This court must now determine whether to give the plaintiffs leave to amend under rule 15(a) of the Federal Rules of Civil Procedure. The focus of this decision is on whether the defendants will be unduly prejudiced by this amendment.

The events leading up to the trial of this case span nearly a decade. There have been numerous decisions, and the court will assume that the reader is familiar with them. *See Chicago Ridge Theatre Ltd. Partnership v. M & R Amusement Corp.*, 732 F.Supp. 1503 (N.D.Ill.1990); *Chicago Ridge Theatre Ltd. Partnership v. M & R Amusement Corp.*, 855 F.2d 465 (7th Cir. 1988). The court, however, does feel compelled to review, in rather broad strokes, the procedural history, because the enormous passage of time has influenced the court's decision that undue prejudice does in fact exist.

The gravamen of this dispute arose over certain clearance agreements that were given to the Evergreen Theater. These agreements entitled the Evergreen to show first run movies to the exclusion of the Chicago Ridge. They became operative sometime in the spring of 1981.

In 1982, the plaintiffs filed an antitrust suit under § 1 of the Sherman Act, 15 U.S.C. § 1 (1982). The plaintiffs' theory of recovery was that clearance agreements between two theaters is unlawful if those theaters are not in substantial competition. (Hereinafter "substantial competition test"). After a motion for summary judgment was entertained by the district court, Judge Marshall limited the trial to three issues. Relevant to this discussion is the determination by the court that the issue that would be tried was whether the Evergreen and the Chicago Ridge were in substantial competition. The plaintiffs moved for reconsideration of this order. In that motion, the plaintiffs raised four arguments, none of which concerned the modern rule of reason.

In the summer of 1983, the plaintiffs amended their complaint. The defendants again moved for summary judgment. In the plaintiffs' briefs they continued to rely on the substantial competition test. The plaintiffs stated that the key issue was still the existence of substantial competition. Nowhere in the plaintiffs' second set of briefs did they argue that the modern rule of reason applied to this case.

The case was tried without a jury in 1985. At the close of the plaintiffs' case, the defendants moved to dismiss the action pursuant to Rule 41(b). After entertaining arguments from the parties, Judge Marshall took the motion under advisement. In July of 1987, the court entered an order dismissing the action.

The plaintiffs appealed this decision contending that the district court had considered certain unintroduced testimony from the defendants' experts. The appellate court found that in fact this was the case, and held that as a consequence the plaintiffs' due process rights had been violated. *Chicago Ridge Theatre Ltd. Partnership v. M & R Amusement Corp.*, 855 F.2d 465 (7th Cir.1988). The court remanded the case "for a new trial or for other proceedings not inconsistent with this opinion." *Id.* at 471. Before the court ended its discussion, it brought into question the vitality of the substantial competition test upon which the parties had relied. The court briefly considered a more modern mode of analysis derived from *Continental T.V. Inc. v. G.T.E. Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). The discussion was prompted by an argument made for the first time in the defendants' reply brief. The court, however, made no determination on the applicability of this new theory to the present action.

The case was remanded to this court. Pursuant to the remand order, this court determined that the best way to proceed was to rule on the defendants' 41(b) motion, without considering any of the evidence that was not properly introduced at trial. After considering the evidence on the theory advanced at trial, this court held that the theaters were in fact in substantial competition and as a result entered a judgment for the defendants. The plaintiffs also moved to reopen their case to present their modern rule of reason theory. For the reasons stated in the opinion, the plaintiffs were not allowed to advance this new theory. *Chicago Ridge Theater Ltd. Partnership v. M & R Amusement Corp.*, 732 F.Supp. 1503 (N.D.Ill.1990).

The plaintiffs requested that the court reconsider its decision and allow them to put forth their case under the modern rule of reason. The plaintiffs requested leave to amend their complaint under Rule 15(a) to include this new theory, which had not been previously pleaded. The court decided to hold a hearing to determine whether the defendants would be unduly prejudiced by this proposed amendment.[1]

As a result, the parties were ordered to come into court for a hearing to determine whether undue prejudice does in fact exist. The parties also filed briefs in support of their position. Having heard the arguments and the evidence, the court determined that:

1. Many witnesses that the defendant would call, if a trial were to take place today, are scattered throughout the country and beyond the subpoena power of this court.

2. Legal fees paid by the defendants through 1985 far exceed $200,000.

3. The defendants had not taken a survey of their own in preparation for the original trial.

4. No evidence has been presented concerning any shift in population densities around the two theaters since the date of Bradburn's original survey, or other demographics.

## DISCUSSION

■ When looking at the entire record, the court is convinced that allowing the plaintiff to proceed on this new theory of

---

**1.** In its memorandum opinion dated July 29, 1990, this court stated:

While the court noted in its prior ruling that the plaintiffs raised the Rule of Reason very late in these proceedings, the plaintiffs have put forth evidence in their motion for reconsideration that the defendants were ready to meet this case in January 1985. The defendants argue that they were prepared to defeat only the plaintiffs' original theories under the Rule of Reason, not a so-called modern Rule of Reason case. This remains to be seen. The court orders the parties to appear before it to discuss whether the defendants would have been unduly prejudiced in January 1985, and remain so prejudiced to this day by having to defend against the plaintiffs' new theory of liability.

liability would be unduly prejudicial to the defendants. While the court is not unmindful that the judicial system has not functioned with alacrity, this does not erase the existence of prejudice nor excuse the contribution of the parties to it.

In reviewing the record, it is clear that the defendants were prepared only to defeat the plaintiffs' case under the substantial competition test and not try the case under the modern rule of reason, which was neither plead nor argued. Seminal in this decision is the fact that Judge Marshall, in the original litigation, made it unmistakably clear that this case would be tried under the substantial competition test. Although the plaintiffs amended their complaint in the summer of 1983, they did not include the modern rule of reason. Having limited their complaint to the substantial competition test, this court can not see how the defendants were on notice that they needed to prepare to defeat a case under the modern rule of reason.

The plaintiffs argue that by virtue of several citations to cases pertaining in part to the modern rule of reason in the defendants' proposed findings of fact and conclusions of law, they were prepared to try this case under that theory. In light of this contention, the court would like to point out that the parties throughout this litigation have not, to say the least, held back any legal argument that they deemed helpful to their case. This thorough and excessive treatment of the law is also evidenced by the defendants' reply brief to the 7th Circuit in which they mentioned the analysis under the modern rule of reason. The court must conclude that certain references to the modern rule of reason analysis, in light of the plaintiffs' complaint and Judge Marshall's clear delineation of the relevant issues, do not establish that the defendants were prepared to try the case under this issue. Neither does the surfeit of the defendants' arguments establish that they were ready to meet the challenge of a trial under the modern rule of reason. At best, this thoroughness can be attributed to the obligation of every litigant to bring to the attention of the court issues that may be relevant to the dispute, or perhaps the strategic decision of the defendants to err on the side of superfluity, a decision that the parties apparently have made throughout this litigation.

The plaintiffs argue additionally that the defendants' experts were prepared to defeat the plaintiffs' allegations under the modern rule of reason. They point to the fact that the defendant had retained experts of their own and that these experts had reviewed certain economic data pertaining to the competitive relationship between the two theaters. This argument is unpersuasive. To begin with, it is improbable that the defendants would not retain experts of their own to review relevant economic data. It is clear, at least from the evidence presented in the plaintiffs' response, (plaintiffs' response pgs. 7–8) that the defendants' experts focused on the competitive relationship between the two theaters, and there is no indication that the defendants' experts gathered data with the intention of discovering the relative effects these clearances had on the overall competition in the relevant market. It is undisputed that the defendants had not taken a survey of their own. Further, the plaintiffs' own survey proved that the two theaters were in substantial competition. Such a damaging showing by the plaintiffs' own expert, certainly effected the focus of the defendants' trial strategy.

Having determined that the defendants were not prepared to meet the challenge of a case tried under the modern rule of reason, this court must conclude that the defendants would be prejudiced by having to defend against this action, nearly a decade after the events occurred which gave rise to the dispute. This case is almost identical to *Murphy v. White Hen Pantry Co.*, 691 F.2d 350 (7th Cir.1982) where the court stated:

> The district court did not abuse its discretion in refusing to allow the plaintiffs to amend their complaint. The plaintiffs filed their motion six weeks before trial, two years after commencing the action, and several months after the parties had completed discovery. Since the motion injected an entirely new theory of liabili-

ty into the lawsuit, it would have required the reopening of discovery and further delayed trial. Amending the complaint at this late stage clearly would have prejudiced the defendant, who, having successfully defended against the initial allegations, may be forced to duplicate its efforts if discovery is reopened. The plaintiffs, moreover, offered no explanation for their delay in seeking to amend the complaint.

*Id.* at 353.

As in *Murphy*, this proposed amendment would introduce a new theory of liability requiring the reopening of discovery, and would force the defendants to duplicate their efforts after successfully defeating the plaintiffs' initial allegations. Furthermore, this amendment is sought eight years after the original complaint was filed, and nearly a decade after the events which gave rise to this litigation took place. Even if the time spent by the courts in making their various rulings in response to motions and appeals were subtracted, the plaintiffs waited substantially longer than two years to propose their amendment. There has been no explanation given for this lengthy delay.

In addition to the prejudice discussed above, it is clear that the enormous passage of time has exacerbated the problem. The defendants have pointed out that many of the witnesses that would be called if a trial were to take place today are scattered throughout the country. Many of these witnesses are beyond the subpoena power of this court. While it might be possible to get their testimony through video tape or depositions, the defendants would not have been in this position if the plaintiffs had amended their complaint in a more timely fashion. Furthermore, there is no question that many of the witnesses will have diminished recollections of the events which took place nearly a decade ago. *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 752 F.2d 630, 634 (Fed.Cir.1985).

■ There is also the question of litigation costs. Although these costs are not a primary consideration, they do constitute one more example of prejudice. *Knapp v.*

*Whitaker*, 757 F.2d 827 (7th Cir.1985) ("The undue harm and delay in reopening discovery and obtaining separate counsel would have resulted in additional expenditures on the part of each defendant. In view of this prejudice ... we hold that the district court judge did not abuse his discretion in denying Knapp's motion to amend.") Hundreds of thousands of dollars have been expended by the defendants to defeat the plaintiffs' original complaint. The court recognizes that the defendants do not have an unlimited supply of money, and have already succeeded in defeating the plaintiffs' initial theory of liability. Additional substantial expenditures would be required and would be prejudicial.

The parties have also spent a great deal of time arguing whether a survey or other proofs could be offered today that would capture the market as it existed many years ago. At this point, the defendants have already offered sufficient evidence of prejudice to obviate the need to place a great deal of significance on this hypothetical question. In addition, this court is unconvinced that a survey taken today could capture the market as it existed many years ago. The plaintiffs' expert states:

> Unless there has been a very substantial shift in population density around the two subject theaters, or there has been a very significant change in the relative quality of the two subject theaters; or one of the subject theaters has moved location, I see no reason why the survey I performed or a similar survey designed to measure the relative consumer preferences for the two theaters could not be performed today and, absent some other unknown and significant changed condition, be reasonably probative of the competitive relationship between the two theaters at a prior time.

Assuming this is true, the court concludes that it is not enough to establish that a adequate survey can be taken today. There has not been any evidence that the population densities have not changed. Furthermore, even if all of the factors were present, the survey would only be reasonably probative of the competitive re-

lationship between the two theaters. The court concludes that an element of prejudice exists in the inaccuracies inherent in this new survey. The defendants will be prejudiced by having to rely on a survey that is less accurate than one that could have been taken by them if the plaintiffs had amended their complaint in a more timely fashion. Furthermore, this survey only addresses the competitive relationship between the two theaters at a prior time. This showing is relevant to the substantial competition test and not to the issues needed to prove a case under the modern rule of reason which require a more extensive analysis on the impact on competition in general. Finally, the experts conclusions raise additional questions such as whether there are other significant changed conditions that would make a survey today impractical. There are simply to many ifs and unlesses.

The court will address one final argument made by the plaintiffs. The plaintiffs contend that there is a strong policy to try cases on the merits, and by not allowing this amendment the case will not be tried on its merits. Contrary to the plaintiffs assertion, this case was tried on the merits. The plaintiffs chose the battle ground, the substantial competition test, and the case was tried and lost on the issue of their choosing. They cannot argue that they did not know about the modern rule of reason; *Continental* had come down 5 years before their complaint was filed. Having set the parameters of trial, totally cognizant of all of their alternatives, the plaintiffs cannot now complain that they haven't had their day in court. They just want another bite of the apple, but unfortunately at this late date, the apple has been eaten.

For the foregoing reasons the court denies the plaintiffs' motion to amend.