**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0026n.06
Filed: October 13, 2004
No. 03-5773

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RICHARD D. SPEIGHT, | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Middle |
| MASSACHUSETTS MUT. LIFE INS. CO., | ) | District of Tennessee |
| | ) | |
| *Defendant-Appellee.* | ) | |

**Before:**     **BOGGS, Chief Judge; GUY, Circuit Judge; and STEEH, District Judge.**[*]

**PER CURIAM.**   In this diversity case under Tennessee law concerning the termination of insurance benefits, plaintiff Richard D. Speight appeals from the district court's judgment for defendant Massachusetts Mutual Life Insurance Co. ("Mass Mutual") following a bench trial.   Because we hold that the district court did not clearly err in finding that Speight no longer had a disabling mental condition, we affirm.

### I

In 1985 and 1986, Richard D. Speight purchased two disability income insurance policies from Connecticut Mutual Life Insurance Company ("Connecticut Mutual").   These policies both

---

[*]The Honorable George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

provide for coverage in the event of either of two kinds of disability: "Total Disability" and

"Residual Disability". These terms are defined in the policies as follows:

> **Total Disability.** You're totally disabled if because of sickness or injury you can't do the main duties of your occupation. You must be under a doctor's care.

> **Residual Disability.** You're residually disabled if because of sickness or injury: you can do some, but not all, of the main duties of your occupation.

> OR

> you can work at your occupation no more than 3/4 of the hours you worked before becoming disabled.

J.A. 266, 273. The only difference between the 1985 and 1986 policies is that the second includes

an endorsement modifying the definition of residual disability by changing the ratio of hours

workable while still disabled from 3/4 to 4/5.

At the time he purchased the policies, Speight was a senior partner at a law firm that he co-

founded. He was a successful trial litigator; at the time he won a one million dollar verdict, it was

the largest jury verdict in Nashville's history. In addition to his law practice, Speight served as an

adjunct professor at Vanderbilt Law School. He also wrote criminal-law-inspired novels. Starting

in 1983, however, Speight embezzled money from the firm and from a firm client. His partners

discovered the embezzlement in December 1987. The following month, the partners terminated

Speight and reported his embezzlement to the Tennessee Board of Professional Responsibility.

After his partners had been in contact with the Board but before they made their formal complaint,

Speight turned himself in. The discovery of his embezzlement sent Speight into an emotional crisis.

He sought treatment with a psychiatrist, Dr. Vernon Sharp. Dr. Sharp diagnosed Speight as having

a variety of psychological impairments. He further concluded that Speight could no longer function as a trial lawyer. To resolve his disciplinary issues with the Tennessee Board of Professional Responsibility, Speight petitioned the Tennessee Supreme Court to place him on disability inactive status. On April 21, 1988, Connecticut Mutual began payments under his disability insurance coverage.

Speight continued to see Dr. Sharp and, after Dr. Sharp's retirement, Dr. Tucker; he also filed monthly progress reports with the insurance company. Following a merger with Connecticut Mutual in 1996, Mass Mutual took over Speight's policy. In 1998, it requested that Speight undergo an independent examination by two psychiatrists, Drs. Bernet and Tramontana, both of whom were selected and paid for by Mass Mutual. On the basis of their conclusions, Mass Mutual terminated Speight's benefits. Speight responded that, while he still believed he was eligible for total disability benefits, the medical evaluations performed by the doctors suggested he was eligible for residual disability benefits. Following Mass Mutual's negative responses to his claim, Speight filed a complaint with the Tennessee Department of Commerce and Insurance ("TDIC") in October 1999. In response to TDIC's inquiry, Mass Mutual investigated the number of hours Speight had worked prior to the onset of his disability. Mass Mutual never informed Speight of the results of this investigation.

Speight filed suit against Mass Mutual in Tennessee state court. He claimed that Mass Mutual had violated the insurance contract by discontinuing his benefits in 1999. Speight also sought relief under the federal ERISA statute and two Tennessee consumer protection laws: the Bad Faith Insurance statute, Tenn. Code Ann. § 56-7-105, and the Tennessee Consumer Protection Act,

No. 03-5773
Speight v. Massachusetts Mut. Life Ins. Co.

Tenn. Code Ann. § 47-18-101 *et seq.* Mass Mutual timely removed the case to federal court based on diversity and federal question jurisdiction because of the ERISA claim.[1]

Following a bench trial, the district court entered judgment for defendants. It held that plaintiff was no longer disabled as of 1999 and that, in any event, his legal disability (his embezzlement of funds) had preceded his factual disability (his depression). The court further held that defendant was not liable under either Tennessee statute.

Speight timely appealed. He argues that the district court's determination that he was no longer disabled in 1999 is clearly erroneous and that the district court relied on unintroduced deposition testimony to reach that conclusion. He also argues that he is entitled to relief under Tennessee's Bad Faith Insurance statute and Tennessee Consumer Protection Act.


**II**

We review the factual determination of the district court under the "clearly erroneous" standard. *Bank of Lexington & Trust Co. v. Vining Sparks Secs., Inc.*, 959 F.2d 606, 609 (6th Cir. 1992). Under this standard, we reverse the district court only when "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Ibid.* (*quoting Andersen v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (internal citations omitted)).

---

[1]The district court did not rule on the ERISA claim in its opinion and appellant does not raise the claim on appeal.

The district court found that Speight was not disabled in 1999 and could return to work without restriction. Speight argues on appeal that this finding is clearly erroneous because the district court at times implied that Speight's return to work was conditional on certain restrictions on his job responsibilities and weekly hours. If Speight could only return to work under these limitations, appellant argues, he would qualify under the residual disability provision in his policy. Though the opinion contains isolated references to restrictions, the district court concluded that Speight no longer suffered from any mental illness and that any restrictions on the terms of his employment were not required by any mental condition.

The district court primarily based this finding on two subsidiary findings. First, any suggestion that Speight could not return to work without restrictions stems from the opinion of Dr. Bernet, one of the psychiatrists hired by Mass Mutual to evaluate Speight. The district court, however, credited Dr. Bernet's clarification at trial that while he recommended that Speight return to work only with certain restrictions on his hours and responsibilities, those restrictions did not pertain to any mental illness or condition. Dr. Bernet stated that the suggested limitations were only lifestyle suggestions. Second, the district court further credited the testimony of Drs. Bernet and Tramontana over that of Dr. Tucker, who had been treating Speight. Drs. Bernet and Tramontana both believed that Speight no longer suffered from a disabling mental condition while Dr. Tucker disagreed. Not only were Drs. Bernet and Tramontana more experienced in diagnosing mental conditions, but Dr. Tucker had a personal relationship with Speight. Appellant also argues that Dr.

Tucker's opinion was entitled to greater weight under a treating physician rule.[2] We have no reason to believe that the district court was mistaken in reaching any of these conclusions.

Appellant urges us to adopt the definition of residual disability found in *Russell v. Paul Revere Life Ins. Co.*, 148 F. Supp. 2d 392 (D. Del. 2001). The *Russell* court defined "residual disability" as "the disability remaining after recovery of the employee from the circumstances that rendered him or her disabled." *Id.* at 404. While the *Russell* court was guided by a dictionary definition of residual, *see ibid.*, we rely on the definition found in the insurance contract at issue here. That contract instructs the policy holder, "You're residually disabled if *because of sickness or injury*: you can do some, but not all, of the main duties of your occupation . . . . OR you can work at your occupation no more than 3/4 of the hours you worked before becoming disabled." (emphasis added) In this case, Speight could not qualify as residually disabled because the district court found that Speight no longer suffered from any sickness. Moreover, the district court found that appellant's mental condition restricted neither the hours that he worked nor the duties he could perform. The district court's finding that appellant was not disabled in 1999 was not clearly erroneous.[3]

### III

---

[2]There is no support for a "treating physician rule" outside of the Social Security context, which was the source of plaintiff's cited authorities at trial; and the leading authority on the question makes any application outside that context dubious. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 n.3 (2003).

[3]Because we affirm the district court's finding that Speight was not disabled in 1999, we do not reach the court's other finding that Speight's legal disability preceded his factual disability.

Speight argues that the district court's reliance on deposition testimony not entered into evidence at trial was harmful error meriting reversal. We disagree. This court has addressed the issue of relying on unintroduced deposition testimony in *Processteel, Inc. v. Mosley Mach. Co.*, 421 F.2d 1074, 1076 (6th Cir. 1970). While explicitly disapproving of the use of unintroduced deposition testimony, this court upheld the district court's decision when "[t]here was ample evidence to support the District Judge's finding . . . ." *Ibid.* Other circuits have articulated the same standard using different terms. *See White v. Vathally*, 732 F.2d 1037, 1041 (1st Cir. 1984) ("[W]e look to the evidence actually introduced at trial to determine whether the district court's finding is *adequately supported*.") (emphasis added); *Chicago Ridge Theatre Ltd. P'ship v. M & R Amusement Corp.*, 855 F.2d 465 (7th Cir. 1988) ("If the district court did in fact *rely substantially* on this unintroduced testimony . . . , the plaintiffs were denied due process of law and there must be a new trial or other proceedings.") (emphasis added).

In this case, the district court relied on two segments of deposition testimony not offered into evidence. These segments of deposition testimony were either amply supported by other evidence properly before the court or were irrelevant to the outcome of the case. First, the district court used unintroduced portions of Dr. Bernet's deposition to establish that Speight's return to work was not limited by his mental condition. Dr. Bernet testified to the same effect at trial. The conclusion that Speight could return to work without restrictions was therefore supported by other evidence in the record. Second, the district court used the deposition testimony of Ms. O'Donnell, the firm administrator at Speight's law firm, to show that Speight did not work for 60-70 hours a week, as he later claimed. The number of hours Speight worked prior to becoming disabled is only relevant

if the district court had found that the number of hours he could work in 1999 was limited to a certain number. In that case, Speight could qualify as residually disabled if he could only work four-fifths or three-quarters of the hours that he used to work. Because the district court found that there was no restriction on the number of hours Speight could work in 1999, the number of hours Speight used to work and therefore also the inappropriate use of O'Donnell's deposition testimony is irrelevant to the outcome of the case. For these reasons, the district court's use of unintroduced testimony does not merit reversal.

**IV**

Finally, Speight cannot recover on his claims under the Bad Faith Insurance statute, Tenn. Code Ann. § 56-7-105, or the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, because he has not been wrongly denied benefits under his insurance policies. Under the Bad Faith Insurance statute, a plaintiff must prove that "the refusal to pay must not have been in good faith." *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986). In this case, the refusal to pay was based on a theory vindicated at trial and on appeal. We therefore cannot say that defendant acted in bad faith. Similar reasoning bars appellant's recovery under the Tennessee Consumer Protection Act. To receive compensation under that statute, appellant must prove "ascertainable loss . . . as a result of" an improper act. Tenn. Code Ann. §47-18-109(a)(1). Speight complains on appeal only that Mass Mutual never reported to him or to the TDIC either that they had investigated the number of hours Speight had previously worked or the results of that investigation. Regardless of whether that concealment was improper, Speight cannot show loss

No. 03-5773
Speight v. Massachusetts Mut. Life Ins. Co.

because he cannot show that he deserved to collect under the policy.  For these reasons, we AFFIRM

the judgment of the district court.